UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────

DR. MUKUND VENGALATTORE,

                Plaintiff,

      vs.

CORNELL UNIVERSITY, BETSY DeVOS, SECRETARY
OF EDUCATION, U.S. DEPARTMENT OF EDUCATION
AND U.S. DEPARTMENT OF EDUCATION,

                Defendants.
───────────────────────────────

**ANSWER OF CORNELL
UNIVERSITY**

Civil Action No.:
18-cv-01124-GLS-DEP

Defendant Cornell University ("Cornell" or "the University") as and for its Answer to plaintiff's Complaint, states upon information and belief through counsel, Ward Greenberg Heller & Reidy LLP, as follows:

1.      Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 1 of the Complaint, except admits that plaintiff is a natural person.

2.      States in response to the allegations set forth in paragraph 2 of the Complaint that plaintiff was, until June 30, 2018, a member of the faculty of the University's College of Arts and Sciences.

3.      Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 3 of the Complaint, except admits that plaintiff self-identified during the course of his employment at Cornell as a male, and that he self-identified as having been born in India.

4.      Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraphs 4, 37, 227, 228, 230-245, 253-263, 267-274, 276-278, 288, 289, 296, 311, 361, 419, 550-552, 572, 574, 648, 649, 651-653, 678, 733, 734, 744 and 763 of the Complaint.

5.      Admits in response to the allegations set forth in paragraphs 5 and 6 of the Complaint that Cornell is a private institution of higher learning, founded in 1865 and existing under the laws of the State of New York at all relevant periods since that time, and further states that Cornell was designated in 1865 as a land grant institution under relevant provisions of the Morrill Act, that it operates four contract colleges for the State of New York (the "contract colleges") pursuant to New York Education Law § 5701, *et seq*., to which the Court is respectfully referred for the specific roles, responsibilities, and administration of those four contract colleges, and further affirmatively states that at all relevant times Cornell has been, and it remains, a private institution of higher learning, and that at no time has its College of Arts and Sciences been among the contract colleges operated for the State of New York.

6.      Denies the allegations set forth in paragraph 7 of the Complaint, and affirmatively states that Cornell maintains seven undergraduate colleges on its Ithaca campus, including the College of Arts and Sciences; the College of Art, Architecture and Planning; the S. C. Johnson College of Business; the College of Engineering; and three contract colleges—the College of Agriculture and Life Sciences, the College of Human Ecology and the College of Industrial and Labor Relations.  Cornell also maintains several graduate and postgraduate colleges—four on its Ithaca campus, including the S. C. Johnson Graduate School of Management, the Cornell Law School, the Cornell Graduate School and the College of Veterinary Medicine (a contract college); three in New York City—Cornell Tech, Weill Cornell Medicine and the Weill Graduate School of Medical Sciences; and one in Doha, Qatar—Weill Cornell Medicine-Qatar.

7.      Admits upon information and belief the allegations set forth in paragraphs 8 and 9 of the Complaint.

8.      States in response to the allegations set forth in paragraph 10 of the Complaint that these allegations constitute characterizations of plaintiff's claim, and contain no averment of fact to which a responsive pleading is required; to the extent a response is deemed necessary, the University admits that plaintiff purports to sue Secretary DeVos in her official capacity only.

9.      States in response to the allegations set forth in paragraphs 11 and 12 of the Complaint that these allegations constitute conclusions of law, and contain no averment of fact to which a responsive pleading is required; to the extent a response is deemed necessary, the University denies knowledge or information sufficient to form a belief as to plaintiff's current residence, and denies that the events pleaded in the Complaint form the basis for any viable claim against Cornell.

10.     States in response to the allegations set forth in paragraphs 13 and 14 that these paragraphs purport to quote from certain statutory provisions, and respectfully refers the Court to the sources purportedly quoted for their compete and contextual content.

11.     States in response to the allegations set forth in paragraphs 15, 16 and 17 of the Complaint that these allegations constitute conclusions of law, and contain no averment of fact to which a responsive pleading is required; to the extent a response is deemed necessary, the University admits upon information and belief the allegations set forth in these paragraphs.

12.     States in response to the allegations set forth in paragraph 18 of the Complaint that these allegations constitute conclusions of law, and contain no averment of fact to which a responsive pleading is required; to the extent a response is deemed necessary, the University denies knowledge or information sufficient to form a belief as to the truth of these allegations.

13.     States in response to the allegations set forth in paragraphs 19-36, 38-58, 69-80, 82-103, 106-128 and 134-169 of the Complaint that these allegations purport to quote from or

3

characterize the content of certain documents, respectfully refers the Court to the sources purportedly quoted for their complete and contextual content, and affirmatively states that to the extent plaintiff seeks to premise any claim against Cornell on an assertion that he was sanctioned or disciplined for an alleged act or omission that purportedly violated Title IX or University Policy 6.4, or that he was deprived of any procedural right that otherwise should have been afforded him, such claims are unwarranted and not legally cognizable because, among other reasons: (a) Jane Roe's complaint of sexual assault was made more than one year after she had left Cornell, and thus was deemed time-barred under University Policy 6.4 [*see* Exhibit 13, attached to this Answer, at pages 3 of 63 and 62 of 63]; (b) plaintiff and Jane Roe were notified, in writing, that the University's investigation would proceed only under the University's separate Policy regarding Romantic and Sexual Relationships Between Students and Staff (the "Romantic and Sexual Relationships Policy"), which prohibits romantic relationships between a student and a faculty member holding a position of authority over the student, such as positions where the faculty member teaches, coaches, supervises or advises the student [*see* Exhibit 13, page 3 of 63]; (c) plaintiff was not found responsible for violating any provision of Policy 6.4, nor was he sanctioned for any alleged Policy 6.4 violation; (d) after a thorough and complete investigation plaintiff was found responsible for violating the University's separate Romantic and Sexual Relationships Policy [*see* Exhibit 13]; (e) plaintiff was sanctioned for violating the Romantic and Sexual Relationships Policy [*see* Exhibits 7, 8]; (f) after stating his intent to grieve this responsibility finding internally, plaintiff failed to pursue the internal grievance mechanisms available at Cornell [*see* Exhibits 9, 10, 11, 12]; (g) plaintiff's application in his prior, failed litigation against Cornell for an Order from the Court, expunging the finding of responsibility for his violation of the University's Romantic and Sexual Relationship Policy, was denied [*see* Exhibit 1]; (h) plaintiff

4

failed to appeal from that final Order denying his motion to expunge the misconduct findings made against him; (i) his time to do so now has expired [*see* Exhibit 2]; and (j) plaintiff otherwise was afforded all procedural rights and privileges due him under all applicable Cornell policies and procedures.

14.      A true and correct copy of the August 21, 2017 Order of the Supreme Court, Schuyler County (Morris, J.) denying plaintiff's motion to expunge the University's findings that he had violated Cornell's Romantic and Sexual Relationships Policy and that he had lied during the investigation related to that alleged violation, which Order issued in *Vengalattore v. Cornell University and Gretchen Ritter*, Schuyler County Index Number 2016-119 (the "*Vengalattore* State Court Action"), and was entered in the Schuyler County Clerk's Office on August 23, 2017, is attached as Exhibit 1.

15.      A true and correct copy of August 24, 2017 Notice of Entry of the August 21, 2017 Order attached as Exhibit 1, served on the law firm then representing plaintiff in the *Vengalattore* State Court Action, together with the Affidavit of Service reflecting service by mail on August 24, is attached as Exhibit 2.

16.      Vengalattore failed to appeal from the August 21 Order, and his time to do so expired on September 28, 2017; the August 21 Order therefore is final and not further appealable.

17.      Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraphs 59 through 64, and affirmatively states that to the extent plaintiff seeks to premise any claim against Cornell on an assertion that he was sanctioned or disciplined for an alleged act or omission that purportedly violated Title IX or University Policy 6.4, or that he was deprived of any procedural right that otherwise should have been afforded him, such claims are

unwarranted and not legally cognizable, for the several reasons set forth in detail in paragraph 13 of this Answer.

18.     Admits in response to the allegations set forth in paragraphs 65 through 67 of the Complaint that Cornell University has been identified as one of literally hundreds of institutions across the country with one or more open investigations being conducted by OCR, affirmatively states that at no time has OCR deemed Cornell to have been in violation of Title IX (or any other statute overseen by OCR), and further affirmatively states that to the extent plaintiff seeks to premise any claim against Cornell on an assertion that he was sanctioned or disciplined for an alleged act or omission that purportedly violated Title IX or University Policy 6.4, or that he was deprived of any procedural right that otherwise should have been afforded him, such claims are unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 13 of this Answer.

19.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 68 of the Complaint, except admits that prior to the Fall 2013 semester, Cornell investigated and adjudicated complaints of discrimination and harassment (including complaints of sexual misconduct), against staff and faculty members under Policy 6.4, but investigated and adjudicated such complaints against *students* under the Cornell Campus Code of Conduct, which Code of Conduct applied a clear and convincing standard in the assessment of responsibility.  The University affirmatively states that as of the Fall 2013 semester, Cornell moved the process for investigating complaints of sexual misconduct against *students* to University Policy 6.4, which governs prohibited discrimination, protected status retaliation, sexual violence and retaliation, and which employs in all such instances a preponderance of evidence standard.  Cornell further affirmatively states that at no time has the Cornell Code of Conduct governed complaints against

6

faculty members for misconduct in the course of their employment (such as engaging in romantic relationships with students they teach, coach or advise, or as to whom they hold positions of authority—as in the instant situation), and to the extent plaintiff seeks to premise any claim against Cornell on an assertion that he was sanctioned or disciplined for an alleged act or omission that purportedly violated Title IX or University Policy 6.4, or that he was deprived of any procedural right that otherwise should have been afforded him, such claims are unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 13 of this Answer.

20.     A true and correct copy of the Cornell Campus Code of Conduct, versions of which date back to the early 1970s, is attached as Exhibit 3.

21.     A true and correct copy of Cornell University Policy 6.4, first promulgated in 1996, is attached as Exhibit 4.

22.     A true and correct copy of Cornell University's Procedures for Resolution of Reports Against Faculty Under Cornell University Policy 6.4 is attached as Exhibit 5.

23.     A true and correct copy of the University's Policy prohibiting Romantic and Sexual Relationships Between Students and Staff (the "Romantic and Sexual Relationships Policy"), also first promulgated in 1996, is attached as Exhibit 6.

24.     Denies the allegations set forth in paragraph 81 of the Complaint, except admits that for at least the past thirty years Cornell has not entered into a Title IX-related Resolution Agreement with OCR, and affirmatively states that Policy 6.4 has been in existence since 1996, that the current Campus Code of Conduct has been in existence since 2008, that forerunners of that Campus Code of Conduct date back to the early 1970s, and that the University's Romantic and Sexual Relationships Policy has been in place since 1996.

25.     Denies the allegation set forth in paragraph 104 of the Complaint that prior to 2012, complaints of sexual harassment or related misconduct against faculty were governed by procedures set forth in the Campus Code of Conduct, affirmatively states that complaints of sexual harassment or related misconduct against faculty never have been governed by procedures set forth in the Cornell Campus Code of Conduct, further affirmatively states that the misconduct for which plaintiff was sanctioned was governed by the University's Romantic and Sexual Relationships Policy, and that the procedures involved in the review and discipline of his misconduct were dictated by the authority conferred upon the deans of Cornell's various colleges (in this instance, its College of Arts and Sciences), and in grievance procedures promulgated by the College of Arts and Sciences and by Cornell's trustees (as reflected by relevant provisions of the University's Faculty Handbook), which review mechanisms under the circumstances at bar afforded plaintiff grievance rights before the Cornell Faculty Committee on Academic Freedom and the Professional Status of the Faculty—grievance rights he has never pursued.  Cornell separately alleges that to the extent plaintiff seeks to premise any claim against Cornell on an assertion that he was sanctioned or disciplined for an alleged act or omission that purportedly violated Title IX or University Policy 6.4, or that he was deprived of any procedural right that otherwise should have been afforded him, such claims are unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 13 of this Answer.

26.     A true and correct copy of Dean Gretchen Ritter's October 6, 2015 letter finding plaintiff responsible for violating Cornell's Romantic and Sexual Relationships Policy, and for lying to the investigators during the investigation into the complaint against him, as well as assessing certain preliminary sanctions based upon plaintiff's misconduct, is attached as Exhibit 7.

27.    A true and correct copy of Dean Ritter's February 6, 2017 letter imposing additional sanctions upon plaintiff for the foregoing acts of misconduct, including a two week suspension without pay, is attached as Exhibit 8.

28.    The October 6, 2015 and February 6, 2017 letter determinations from Dean Ritter set forth the totality of the sanctions imposed upon plaintiff for his misconduct as found by Cornell, and thus since the time these determinations issued plaintiff had both the right and the ability to pursue a grievance under relevant Cornell grievance procedures in effect at the College of Arts and Sciences, should plaintiff have been so inclined.

29.    A true and correct copy of the Grievance Procedures for Academic Personnel at Cornell's College of Arts and Sciences is attached as Exhibit 9.

30.    True and correct copies of excerpts from the University's Bylaws (including the entirety of Article XVII [formerly Article XVI], styled *The Instructional and Research Staff—Appointment and Tenure*), is attached as Exhibit 10.

31.    A true and correct copy of Section 4.3 of the Cornell Faculty Handbook, styled *Separation*, is attached as Exhibit 11, and a true and correct copy of Section 4.3.3, setting forth University appeal rights triggered by a denial of tenure, is attached as Exhibit 33.

32.    True and correct copies of communications from or on behalf of plaintiff, threatening to challenge and grieve Dean Ritter's determination and sanctions assessments (threats he never pursued) are attached as Exhibit 12.

33.    States in response to the allegations set forth in paragraph 105 of the Complaint that these allegations constitute conclusions of law, and contain no averment of fact to which a responsive pleading is required; to the extent a response is deemed necessary, the University respectfully refers the Court to the referenced Cornell Campus Code of Conduct [*see* Exhibit 3)]

9

for its complete and contextual content, and states that to the extent plaintiff is seeking through this allegation to imply that the University deprived plaintiff of any procedural right or privilege with respect to its review of his acts of misconduct, or that Cornell otherwise acted unlawfully or improperly in this matter, Cornell denies such attempted implication.

34.     Admits in response to the allegations set forth in paragraph 129 of the Complaint that Cornell revised Policy 6.4 in April of 2012, but *only* regarding its procedures for handling cases involving *student* respondents, affirmatively states that the revisions to Policy 6.4 had no impact on the investigation into the allegations of misconduct for which plaintiff ultimately was sanctioned by Cornell, and further states that to the extent plaintiff seeks to premise any claim against Cornell on an assertion that he was sanctioned or disciplined for an alleged act or omission that purportedly violated Title IX or University Policy 6.4, or that he was deprived of any procedural right that otherwise should have been afforded him, such claims are unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 13 of this Answer.

35.     States in response to the allegations set forth in paragraphs 130 and 133 of the Complaint that Policy 6.4 was, when promulgated, compliant with governing standards under Title IX, and respectfully refers the Court to the sources cited for their complete and contextual content.

36.     Admits in response to the allegations set forth in paragraph 131 of the Complaint that University Policy 6.4 was applicable during the 2014-2015 academic year, and affirmatively states that the provisions of Policy 6.4 had no impact on the investigation into or the determination of the acts of misconduct for which plaintiff was sanctioned, and to the extent plaintiff seeks to premise any claim against Cornell on an assertion that he was sanctioned or disciplined for an alleged act or omission that purportedly violated Title IX or University Policy 6.4, or that he was deprived of any procedural right that otherwise should have been afforded him, such claims are

10

unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 13 of this Answer.

37.     Denies the allegations set forth in paragraph 132 with respect to misconduct allegations of the type at issue in this matter that have been made or may be made against University faculty members, denies that the modifications to Policy 6.4 altered or affected the investigation or determination of such misconduct allegations, and affirmatively states that to the extent plaintiff seeks to premise any claims against Cornell on an assertion that he was sanctioned or disciplined for an alleged act or omission that purportedly violated Title IX or University Policy 6.4, or that he was deprived of any procedural right that otherwise should have been afforded him, such claims are unwarranted and not legally cognizable for the reasons set forth in paragraph 13 of this Answer.

38.     Admits the allegations set forth in paragraph 170 of the Complaint, and affirmatively states that Policy 6.4 has been so limited since its promulgation in 1996.

39.     Denies the allegations set forth in paragraph 171 of the Complaint, and affirmatively states that with respect to allegations of misconduct such as those at issue in this litigation that led to the sanctioning of plaintiff, the Dean of Cornell's College of Arts and Sciences was the proper party to investigate these allegations, either personally or through a delegate, and that the Committee on Academic Freedom and Processional Status of the Faculty, upon the filing of an appropriate grievance (which was never filed by plaintiff—*see* Exhibits 7, 8, 9, 10 and 11), could and would have reviewed the Dean's determination and the sanctions she assessed against plaintiff.

40.     Denies the allegations set forth in paragraph 172, and affirmatively states that the Committee on Academic Freedom and Processional Status of the Faculty was established by the

University's Faculty Senate, with its faculty members appointed by the Cornell faculty's Nominations and Elections Committee, upon the concurrence of the Cornell Faculty Senate.

41.     States in response to the allegations set forth in paragraphs 173 and 177 of the Complaint that the charge of the Committee on Academic Freedom and Processional Status of the Faculty includes, but is not limited to, the receipt and review of complaints brought by or against a University faculty member with respect to matters involving academic freedom and responsibility, freedom of teaching and learning, and any other matters that might: (a) affect the faculty member's professional reputation; (b) impair the execution of his or her professional and University responsibilities; (c) adversely affect his or her economic status; (d) lead to his or her dismissal, or (e) otherwise alter the terms or conditions of his or her employment.

42.     Denies the allegations set forth in paragraph 174 of the Complaint, and affirmatively states that the Cornell Romantic and Sexual Relationships Policy arose from a resolution adopted in 1995 by the Faculty Council of Representatives, and was later, in 1996, approved by Cornell's President and Provost as University policy.  (*See* Exhibit 6).

43.     States in response to the allegations set forth in paragraphs 175, 176 and 180-194 of the Complaint that to the extent those allegations purport to quote from or characterize documents, the Court is respectfully referred to the sources purportedly quoted or characterized for their complete and contextual content, and the University denies any allegation or implication that plaintiff was not properly found responsible for violating the University's Policy prohibiting Romantic and Sexual Relationships Between Students and Staff.  In this regard, Cornell further affirmatively states that: (a) plaintiff, represented and advised by counsel, stated his intent to grieve this responsibility finding internally, but failed to pursue the internal grievance mechanisms available at Cornell despite having had this opportunity for more than two years [*see* Exhibits 7,

12

8, 9, 10, 11, 12]; (b) plaintiff sought and was denied in his prior, failed litigation against Cornell an Order expunging the findings that he had violated the University's Romantic and Sexual Relationships Policy and had lied to the University investigators [*see* Exhibit 1]; (c) plaintiff failed to appeal from that final Order denying his motion to expunge the misconduct findings made against him; (d) plaintiff's time to appeal from that final Order denying expungement now has expired [*see* Exhibit 2]; and (e) plaintiff otherwise was afforded all procedural rights and privileges due him under applicable Cornell policies and procedure. (*See generally* Exhibits 13, 24, 25, 26).

44.    Denies the allegations set forth in paragraphs 178, 179, 311, 332, 333, 336, 364, 382, 650, 655-657, 663-668, 669 (a)-(c), 670 (a)-(e), 671-673, 680-686, 687(a)-(g), 688-691, 695, 697, 698, 700, 702-704, 706-708, 711-715, 719-727, 735, 736, 745, 753, 764, 765, 777, 789, 801, 817, 834, 837 and 838 of the Complaint.

45.    Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 195 of the Complaint, except admits that plaintiff claims to have obtained his Ph.D. in Physics from the Massachusetts Institute of Technology, and claims to have completed a postdoctoral research fellowship at the University of California at Berkeley.

46.    Admits the allegations set forth in paragraphs 196, 197, 502 and 575 of the Complaint.

47.    States in response to the allegations set forth in paragraph 198 of the Complaint that plaintiff was hired by Cornell because it viewed him as an appropriate addition to its Physics faculty, and hoped that he would add to its complement of nationally renowned scholars in the Department of Physics, denies knowledge or information sufficient to form a belief as to the allegation that plaintiff was heavily recruited, and admits that plaintiff's area of focus at the time

13

he was hired by Cornell was on atomic, molecular and optical ("AMO") physics, also commonly referenced as "cold atom" physics.

48.    Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraphs 199 and 200 of the Complaint, except admits upon information and belief that plaintiff was expected to recruit graduate students and postdoctoral fellows to work in his laboratory, and that part of plaintiff's laboratory work involved the construction of certain apparatuses to facilitate the conduct of experiments and research.

49.    Admits upon information and belief, in response to the allegations set forth in paragraphs 201 and 202 of the Complaint, that Jane Roe was plaintiff's first graduate advisee, that this advisement started in or around 2009, and that Roe did thereafter pursue her Ph.D. degree under plaintiff's supervision and advisement for a period of time, which included all times she remained on campus at Cornell.

50.    Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraphs 203 through 207 and 209 through 224, except that Cornell admits that the relationship between Jane Roe and plaintiff was investigated in detail by investigators from the University's Office of Workforce Policy and Labor Relations ("WPLR"), at the request of Dean Ritter and in response to a complaint filed against plaintiff by Roe; that during this investigation Roe's account of relevant events often sharply differed from plaintiff's account of those events, insofar as he denied having engaged in any sexual activity with Roe or misconduct of any sort; that plaintiff's account of events in large part was not credited by the investigators; and Cornell respectfully refers the Court to the comprehensive and thorough investigative Report, dated September 25, 2015 [*see* Exhibit 13] for its complete and contextual content.

51.     A true and correct copy of the September 25, 2015 investigative report issued with respect to the complaint of Jane Roe is attached as Exhibit 13.

52.     The University further affirmatively states in response to the allegations set forth in paragraphs 201-207, 209-224 of the Complaint, and it states in response to the allegations set forth in paragraphs 576-581, 583, 584, 586-588 and 590-620 of the Complaint, that to the extent these allegations purport to characterize or quote from the content of the Cornell investigators' September 25, 2015 report, the Court is respectfully referred to the report, attached as Exhibit 13, for its complete and contextual content; that the findings in that 63-page investigative Report, supported by more than 1,000 pages of documentary evidence [*see* Exhibits 24, 25 and 26], were that plaintiff had violated the University's Romantic and Sexual Relationships Policy by engaging in an undisclosed romantic relationship with Roe over an extended period of time; and that those investigative findings caused Dean Ritter to conclude that plaintiff also had lied to the University's investigators in connection with their investigation.  The Report identified, among other things, the following evidence and facts in support of its conclusions and findings:

- Jane Roe's direct, contemporaneous statements discussing the relationship with plaintiff;

- Jane Roe's documented statements during a medical exam that included a pregnancy test, provided long before any interpersonal difficulties with plaintiff had arisen;

- Disclosures by Jane Roe of the relationship with plaintiff that were made to both her sister and to a friend, again long before any interpersonal difficulties with plaintiff had arisen, and long before Roe would have had any motive to fabricate;

- Text messages and e-mails of a highly personal nature (including e-mails with overtly romantic content);

- Expensive gifts given to Jane Roe by plaintiff;

15

- Jane Roe regularly calling plaintiff "honey," "babe," and "darling" in their correspondence, as well as in front of others; and

- The independently confirmed observation of Jane Roe laying across plaintiff's lap while she was sleeping next to him on a long plane flight.

[*See* Exhibit 13 at pages 35-61 of 63]. The University further affirmatively asserts that to the extent plaintiff seeks to imply that the University's investigative process was unfair, unlawful or violative of University policy, that its findings were not adequately supported, that burdens of proof were not properly applied pursuant to applicable University policies and processes, or that the investigative report was inadequate, incomplete, unfair or biased, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

53. States in response to the allegations set forth in paragraph 208 of the Complaint that, upon information and belief, at some point after Roe began at Cornell plaintiff took on additional graduate students as advisees, including Srivatsan Chakram, who self-identified as a male and who stated to Cornell's investigators that India was his home, and denies knowledge or information sufficient to form a belief as to the balance of the allegations in this paragraph.

54. Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraphs 225 and 226 of the Complaint, but admits that the University's investigators identified substantial evidence that Roe used terms of endearment such as "darling" and "babe" when communicating with plaintiff during the period that she was supervised by him, and that Roe claimed she reserved the use of those terms for "men with whom she is in a relationship" [*see* Exhibit 13, page 46 of 63]. The University further affirmatively states that the investigators did not identify any communication from plaintiff informing Roe that he viewed such communications

as "improper in a professional setting," or that he had been "repeatedly informing Roe that she should stop."

55. States in response to paragraph 229 of the Complaint that Jane Roe stated to the Cornell investigators that she used terms of endearment such as "darling" and "babe" only for "men with whom she is in a relationship," such as plaintiff, and that she would use the term "honey" when referring to friends and colleagues, which she claimed was a common practice in the regions of the southern United States where she was raised.

56. Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraphs 246 through 251 of the Complaint, except admits that Jane Roe told Cornell investigators that she returned to Ithaca on the evening of December 30, 2010, and that Roe further stated to the investigators that she and plaintiff had sexual relations at that time.

57. States in response to the allegations set forth in paragraph 252 of the Complaint, upon information and belief, that at some point after Roe became plaintiff's advisee he took on additional graduate students as advisees, including Yogesh Patil and Collin Reynolds, and denies knowledge or information sufficient to form a belief as to the balance of the allegations in this paragraph.

58. Admits in response to the allegations set forth in paragraph 264 of the Complaint that in or around late 2011, as part of its routine third-year reappointment process for faculty members within the College of Arts and Sciences, Cornell conducted an interim assessment of plaintiff's performance, further states that as a result of that interim point plaintiff's performance was considered satisfactory by his Department colleagues, and affirmatively states that such interim review, or any reappointment that occurred as part of the interim review, did not infer that the subject faculty member would, or likely would, become a tenured member of the faculty, which

17

determination typically is made at a point during or after the faculty member's sixth year of service to the University.

59.    Admits in response to the allegations set forth in paragraph 265 of the Complaint that in or about May 2011 Jane Roe submitted a letter regarding plaintiff's application for interim reappointment to his tenure-track faculty position, and respectfully refers the Court to that letter for its complete and contextual content.

60.    Admits in response to the allegations set forth in paragraph 266 of the Complaint that after completion of the interim reappointment review in 2011, plaintiff was reappointed to a three-year term as an untenured, tenure-track faculty member in the College of Arts and Sciences.

61.    Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraphs 275 and 284-287 of the Complaint, and states that to the extent those allegations purport to quote from documents, the Court is respectfully referred to the sources for their complete and contextual content.

62.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 279 and 283 of the Complaint, except admits that Roe decided at some point in or around October 2012 to find a new Ph.D. advisor, and to complete her graduate studies at Cornell while working as a research team member at the National Institute of Standards and Technology ("NIST") laboratories in Gaithersburg, Maryland.

63.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 280 through 282 of the Complaint, except admits that plaintiff had agreed that upon Roe's departure from his laboratory group she was to be given authorship credit with respect to certain scholarly articles then in process, and states that to the extent plaintiff

purports to quote from a document he allegedly authored, the Court is respectfully referred to the source for its complete and contextual content.

64.     Admits in response to the allegations set forth in paragraph 290 of the Complaint that Roe, after leaving plaintiff's laboratory, joined the staff at the National Institute for Standards and Technology in Maryland, and thereafter was awarded a graduate degree in Physics from Cornell.

65.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 291, 292, 300-308, 322, 334, 335, 629 and 630 of the Complaint, and states that to the extent plaintiff purports to quote from documents, or surreptitious audio recordings, the Court is respectfully referred to the sources for their complete and contextual content.

66.     Denies the allegations set forth in paragraph 293 of the Complaint, states that plaintiff's tenure dossier was not assembled or ready to be reviewed by his Departmental colleagues (or by others involved in the Cornell tenure review process) until in or around August 2014, and further states that in an effort to address serious concerns about the paucity of plaintiff's scholarly productivity, both his Department and the Dean of the College of Arts and Sciences supported special accommodations such as a reduction in his teaching load, and a several-month extension of the date for completion and submission of plaintiff's tenure dossier in order to provide plaintiff with the ability to enhance that dossier, and affirmatively states that only after he had been granted and had taken full advantage of these special accommodations did plaintiff prepare and cause to be submitted his tenure dossier, in or around August 2014.

67.     Denies the allegations set forth in paragraph 294 of the Complaint, states that at the time plaintiff prepared his tenure dossier he claimed to have completed three separate

19

apparatuses to be used in connection with his research, and affirmatively states that in so doing plaintiff ignored the advice of several colleagues in the Cornell Physics Department urging plaintiff to focus on the production of research data from the first two apparatuses instead of diverting efforts and focus in building the third, which diversion upon information and belief contributed to plaintiff's deficient record of scholarship and the paucity of his publications at the time he stood for tenure in 2014.

68. Denies the allegations set forth in paragraph 295 of the Complaint, and affirmatively states that the body of scholarly work produced by plaintiff as of 2014 was deemed insufficient to warrant tenure by numerous external and internal evaluators, who termed plaintiff's academic productivity, among other things, "very thin," "thin," "weak," "moderate," "adequate but not stellar," reflective of one who "has not been very productive," reflective of one who lacks any "home run publication," and reflective of one who has fallen short of reaching "full potential" and is "far from reaching his scientific goals."

69. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 297 through 299 of the Complaint, except admits that Professor Patterson is married to Professor Gibbons, admits that in or around May 2014 members of the Physics Department at Cornell (including plaintiff) became aware of Roe's claim that plaintiff had thrown a power supply in her vicinity, and affirmatively states that: (a) this allegation had no impact on the determination of plaintiff's tenure application; (b) plaintiff's prior judicial challenge to the denial of that tenure application was deemed meritless and was dismissed by unanimous Order of the Appellate Division, Third Judicial Department, dated May 10, 2018 [*see* Exhibit 14]; and (c) the Appellate Division's May 10, 2018 Order dismissing plaintiff's lawsuit in which he made that judicial challenge, as well as its September 7, 2018 Order denying plaintiff's application

for reargument of that dismissal Order [*see* Exhibit 15], each were served upon counsel for plaintiff, with Notice of Entry, well more than 30 days ago, making these Orders final, and not further appealable.  (*See* Exhibit 16).

70.    A true and correct copy of the Order of the Appellate Division, Third Judicial Department, dated May 10, 2018, is attached as Exhibit 14.

71.    A true and correct copy of the Appellate Division, Third Department's September 7, 2018 Order denying plaintiff's application for reargument of the May 10, 2018 dismissal Order, is attached as Exhibit 15.

72.    True and correct copies of the Notices of Entry accompanying the May 10 and September 7 Orders, together with proof of service upon counsel for plaintiff, are attached as Exhibit 16.

73.    Admits in response to the allegations set forth in paragraphs 309 and 310 of the Complaint that Jane Roe submitted a letter commenting on plaintiff's application for tenure, dated May 10, 2014, states that this was one of several letters from graduate students submitted with regard to plaintiff's tenure application, and the Court is respectfully referred to the sources for their complete and contextual content.

74.    States in response to the allegations set forth in paragraphs 312 through 319 of the Complaint that to the extent plaintiff purports to quote from certain documents, the Court is respectfully referred to the sources for their complete and contextual content, and affirmatively states that Jane Roe's claim that plaintiff had thrown a power supply had no impact on the May 2016 final determination of plaintiff's tenure application, issued by University Provost Michael Kotlikoff, which made no reference whatsoever to that alleged incident and focused instead on the deficiencies in plaintiff's scholarship and publication record, and that claim also had no impact on

the determination issued by Dean Ritter in February 2016 also denying tenure, which similarly made no reference whatsoever to Jane Roe's claims related to a thrown power supply.  Cornell further states that plaintiff's prior judicial challenge to the denial of that tenure application was deemed meritless and was dismissed by unanimous Orders of the Appellate Division, Third Judicial Department, as stated in detail in paragraph 69 of this Answer.  (*See* Exhibits 14 and 15).

75.     A true and correct copy of the May 3, 2016 determination issued by Provost Kotlikoff is attached as Exhibit 17.

76.     A true and correct copy of the February 16, 2016 determination issued by Dean Ritter is attached as Exhibit 18.

77.     Denies the allegations set forth in paragraph 320 of the Complaint, and affirmatively states that in September 2014 the tenured members of the Physics Department narrowly voted to recommend plaintiff for tenure (17 in favor, 15 against and 5 positive "provisional" votes that were not included in the formal vote count); states that this narrow vote, with numerous negative votes, was highly unusual for a Department that typically recommended candidates for tenure unanimously; and further states that under applicable University tenure policies the Departmental vote reflects only a recommendation, advisory to the University's decisionmaker, who pursuant to applicable University policy was the Dean of the College of Arts and Sciences.

78.     States in response to the allegations set forth in paragraphs 321 and 323 of the Complaint that, in accordance with applicable University tenure policies the Departmental recommendation, along with input from various other committees and individuals (including in the case of a negative preliminary determination from the Dean of the College, responsive input from the tenure candidate himself), is considered by the Dean in making both a preliminary and a

22

final determination, further states that Dean Ritter upon receipt of all this input determined to deny plaintiff's tenure application, affirmatively states that the University thereafter properly denied plaintiff's tenure application, states that this determination ultimately was upheld, and further states that plaintiff's judicial challenge to that tenure denial was dismissed, by unanimous Order of the Appellate Division, Third Department, dated May 10, 2018, as set forth in detail in paragraph 69 of this Answer. (*See* Exhibit 14).

79.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 324 through 326 of the Complaint, and affirmatively states that on November 2, 2014 Professors Patterson and Thom put Jane Roe in communication with Alan Mittman of the Cornell Office of Workplace Policy and Labor Relations, and thereafter Roe voiced a number of complaints about plaintiff, including allegations that he had violated the University's Romantic and Sexual Relationship Policy. (*See* Exhibit 13, page 4 of 63).

80.    Denies the allegations set forth in paragraph 327 of the Complaint, and affirmatively states that Roe and Mittman spoke promptly after she had been referred to him by Professors Patterson and Thom.

81.    States in response to the allegations set forth in paragraphs 328 and 329 of the Complaint that among the issues Jane Roe initially brought to Alan Mittman's attention were complaints that plaintiff, intentionally and without her consent, had modified her name as published on a website, in what she viewed as a sexualized manner, in order to ridicule and embarrass her, and that plaintiff had ignored her requests to alter that modification. Cornell also affirmatively states that Roe further complained that plaintiff inappropriately, and in violation of his prior commitments to Roe, sought to deny her publication credit on a scholarly article to which she had contributed.

23

82.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 330 of the Complaint, and affirmatively states that Roe never informed Alan Mittman, or any other official at Cornell at any time, that she had requested her name to be listed in the manner she found objectionable.

83.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 331 of the Complaint, except affirmatively states that after Mittman brought Roe's complaints about the publication credit and the website listing to plaintiff's attention plaintiff agreed to revise the listing and to credit Roe on the publication, thereby resolving those issues.  The University further states that Mittman at that time warned plaintiff to avoid any act of retaliation in response to the Roe complaints, and that to the extent plaintiff's allegations in the Complaint purport to quote from a document, the Court is respectfully referred to the source for its complete and contextual content.

84.     States in response to the allegations set forth in paragraphs 337 and 338 of the Complaint that the Faculty Advisory Committee on Tenure Appointments ("FACTA") participated, in an advisory capacity, in the review of plaintiff's tenure application, and that FACTA's participation was consistent with established University tenure review processes, and Cornell further admits that upon its review, this FACTA Committee overwhelmingly recommended denial of plaintiff's tenure application.  Cornell affirmatively states that to the extent plaintiff seeks to imply that the denial of plaintiff's tenure application was inappropriate or invalid, the University properly denied plaintiff's tenure application, that this determination ultimately was upheld, and plaintiff's judicial challenge to that tenure denial was dismissed, by unanimous Order of the Appellate Division, Third Department, dated May 10, 2018, as set forth in detail in paragraph 69 of this Answer.  (*See* Exhibits 14, 15 and 16).

85.     States in response to the allegations set forth in paragraph 339 of the Complaint that to the extent plaintiff seeks to characterize or quote from Professor Clancy's comments, the Court is respectfully referred to the source for their complete and contextual content, and affirmatively states that Professor Clancy's comments: (a) reflect the input of only one of the numerous FACTA members who referred the tenure case to the full Committee for its further consideration; (b) which referral resulted in a lopsided (10-2) vote recommending against tenure; (c) that no evidence exists as to whether, or how, any specific FACTA member (including Professor Clancy) voted (or did not vote) in plaintiff's case; and (d) that the FACTA comments, issued solely in an advisory capacity, played no role whatsoever in the final University determinations denying tenure, issued in February and May 2016.  (*See* Exhibits 17 and 18).

86.     Denies the allegations set forth in paragraphs 340, 389, 392, 401, 412, 417, 425, 427, 435, 437, 474, 476, 481, 483, 490, 501, 504, 521, 527, 529 and 559 of the Complaint, but admits that the Cornell investigators interviewed Jane Roe, plaintiff, Professor Patterson, Srivatsan Chakram, Yogesh Patil, Mohammad Hamidian, Eliza Buhrer-Kapit, Jane Roe's sister, Eliot Kapit, Swati Singh, Sunil Bhave, Scott Flanz, Professor Stamper-Kern, Professor Schwab, Shannon Harvey, Professor Ralph, Collin Reynolds, Kasturi Saha, Professor Campbell and five other persons as part of their comprehensive and thorough investigation.

87.     States in response to the allegations set forth in paragraph 341 of the Complaint that: (a) the substance of all communications made to the Cornell investigators was summarized in their September 25, 2015 report, which pursuant to appropriate University policy was furnished to Dean Ritter for her review and assessment; (b) within six days of completing their February 2015 interviews with Jane Roe regarding her misconduct claims against plaintiff, those investigators from Cornell's WPLR Office fully informed plaintiff of her claims; and (c) with the

25

assistance of his counsel, plaintiff had ample opportunity to participate fully in the complete and comprehensive investigation that found him not responsible for any act allegedly constituting sexual assault, but found him responsible for violating the University's Romantic and Sexual Relationships Policy.  Cornell further affirmatively states that: (d) Dean Ritter, upon her adoption of these investigatory findings, issued a determination dated October 6, 2015 and appropriately sanctioned plaintiff as a result, which sanctions included a two week suspension issued in February 2017 [*see* Exhibits 7 and 8]; (e) after stating his intent to grieve this responsibility finding internally, and while being advised and represented by counsel, plaintiff failed to pursue the internal grievance mechanisms available at Cornell despite having had literally *years* to do so [*see* Exhibits 9, 10, 11 and 12]; (f) plaintiff thereafter sought an Order from the Court expunging the finding of responsibility for his violation of the University's Romantic and Sexual Relationships Policy; (g) plaintiff's application for an Order of expungement was denied by the Court [*see* Exhibit 1]; (h) plaintiff failed to appeal from that final Order denying his motion to expunge the misconduct findings made against him; and (i) his time to do so now has expired. (*See* Exhibit 2).

88.    Denies the allegations set forth in paragraph 342 of the Complaint, and affirmatively states that in accordance with University policy Dean Ritter, after issuing her preliminary determination denying tenure dated October 29, 2014, afforded both plaintiff and the Department of Physics the opportunity to respond to that preliminary determination, and it was only after careful consideration of all the relevant facts, including those set forth in plaintiff's tenure dossier, in the responses by plaintiff and the Department to her preliminary determination, and in the unanimous October 17, 2014 report of the *ad hoc* committee considering plaintiff's tenure candidacy, that Dean Ritter decided to adhere to that October 2014 preliminary determination.  The Court is respectfully referred to Dean Ritter's October 29, 2014 preliminary

determination and her December 8, 2014 letter determination for their complete and contextual

content, and Cornell further asserts that, again consistent with University tenure policy, Dean

Ritter's December 2014 negative determination was considered and supported both by the FACTA

committee and by the University's interim Provost, resulting in Dean Ritter's February 13, 2015

determination denying tenure to plaintiff.  (*See* Exhibits 19, 20, 21, 22, 23).  Cornell, finally, notes

that these recommendations and determinations played no role in the University's ultimate

determinations denying tenure, issued in February and May 2016 [*see* Exhibits 17, 18], and that in

all events the University properly denied plaintiff's tenure application; that denial properly was

upheld; and that plaintiff's judicial challenge to the University's tenure denial was dismissed, by

unanimous Order of the Appellate Division, Third Department, dated May 10, 2018, as set forth

in detail in paragraph 69 of this Answer.  (*See* Exhibit 14).

89.     A true and correct copy of Dean Ritter's October 29, 2014 preliminary

determination is attached as Exhibit 19.

90.     A true and correct copy of the University's *ad hoc* committee report, dated October

17, 2014, is attached as Exhibit 20.

91.     A true and correct copy of Dean Ritter's December 8, 2014 determination is

attached as Exhibit 21.

92.     A true and correct copy of the memorandum issued by interim University Provost

Harry Katz, dated February 12, 2015, is attached as Exhibit 22.

93.     A true and correct copy of Dean Ritter's February 13, 2015 determination is

attached as Exhibit 23.

94.     States in response to the allegations set forth in paragraph 343 that as part of the

WPLR Office investigation, Jane Roe was one of 26 separate persons, including plaintiff, who

were interviewed, and that the first interview with Roe, via telephone, occurred on February 16, 2015.  (*See* Exhibit 13, pages 31 and 32 of 63).

95.     Denies the allegations set forth in paragraph 344 of the Complaint, states that Roe alleged that she and plaintiff had sex on December 30, 2010, which was during the semester break after the close of the Fall 2010 semester at Cornell, and that with respect to this alleged incident on December 30, 2010, Roe's complaint of sexual assault was made more than one year after she had left Cornell, and thus was deemed time-barred under University Policy 6.4 [*see* Exhibit 13, pages 3 of 63 and 62 of 63].  Cornell further states that plaintiff and Roe therefore were notified, in writing, that the University's investigation would proceed only under the University's separate Romantic and Sexual Relationships Policy, which prohibits romantic relationships between a student and a faculty member holding a position of authority over the student, such as positions where the faculty member teaches, coaches, supervises or advises the student [*see* Exhibit 13, page 3 of 63]; that plaintiff was not found responsible for violating any provision of Policy 6.4, nor was he sanctioned for any alleged Policy 6.4 violation; that after a thorough and complete investigation plaintiff was found responsible for violating the University's separate Romantic and Sexual Relationships Policy [*see* Exhibit 13]; that plaintiff was sanctioned for violating the Romantic and Sexual Relationships Policy [*see* Exhibits 7 and 8]; that after stating his intent to grieve this responsibility finding internally, plaintiff failed to pursue the internal grievance mechanisms available at Cornell [*see* Exhibits 9, 10, 11 and 12]; that plaintiff's application in his prior, failed litigation against Cornell for an Order from the Court, expunging the finding of responsibility for his violation of the University's Romantic and Sexual Relationships Policy, was denied [*see* Exhibit 1]; that plaintiff failed to appeal from that final Order denying his motion to expunge the misconduct findings made against him; that his time to do so now has expired [*see* Exhibit 2]; and

28

that plaintiff otherwise was afforded all procedural rights and privileges due him under applicable Cornell policies and procedures, as also has been set forth in detail in paragraph 43 of this Answer.

96.      States in response to the allegations set forth in paragraphs 345 through 360 of the Complaint that these allegations purport to characterize, and in part to quote from, certain documents, and respectfully refers the Court to the sources, including Exhibit 13, for their complete and contextual content.

97.      Denies the allegations set forth in paragraph 362 of the Complaint, and affirmatively states that on March 2, 2015, literally just days after Jane Roe's initial interview with respect to her complaint had been completed, the Cornell investigators invited plaintiff to be interviewed, so he could respond to the allegations and present his position with respect to the nature of his relationship with Roe, all of which was consistent with applicable University policy.

98.      States in response to the allegations set forth in paragraph 363 of the Complaint that these allegations purport to quote from a communication from Alan Mittman to plaintiff informing plaintiff of the nature of Jane Roe's allegations, respectfully refers the Court to that communication for its complete and contextual content, and affirmatively states that the investigation into allegations of plaintiff's misconduct—allegations sustained as a result of that investigation—was fully authorized under the circumstances, and proceeded in accordance with University policy.

99.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 365 of the Complaint, except admits that at his initial March 3, 2015 interview with the University's investigators plaintiff was not accompanied by an attorney, affirmatively states that shortly thereafter counsel did work with plaintiff, and did actively represent him in connection with all University-related matters (including but not limited to the litigation which ultimately was resolved in Cornell's favor through the now-final Order of the

29

Appellate Division, Third Department [*see* Exhibits 14, 15 and 16]); to the extent plaintiff seeks to imply that his choice not to be accompanied by counsel at the March 3 interview resulted from any act or omission of the University, denies that such implication is warranted or appropriate.

100.    Admits the allegations set forth in paragraphs 366 and 371 of the Complaint, and affirmatively states that in denying any sexual or romantic relationship with Jane Roe plaintiff was determined after investigation to have lied to the Cornell investigators, and further affirmatively states that Cornell denies any allegation or implication that plaintiff was not properly found responsible for violating the University's Romantic and Sexual Relationships Policy, for the several reasons set forth in detail in paragraph 43 of this Answer.

101.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 367 through 370 of the Complaint, and affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy, or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable because plaintiff properly was found responsible for violating the University's Romantic and Sexual Relationships Policy, and for the several reasons set forth in detail in paragraph 43 of this Answer.

102.    Denies knowledge of information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 372 and 373 of the Complaint, affirmatively states that to the extent these allegations purport to quote from a communication from Sarah Affel to plaintiff discussing the nature of Jane Roe's allegations, the Court is respectfully referred to that source for its complete and contextual content, and further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy,

or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

103.   States in response to the allegations set forth in paragraphs 374 through 379 of the Complaint that that to the extent these allegations purport to characterize or quote from e-mail communications involving plaintiff, the Court is respectfully referred to the sources for their complete and contextual content; states that witnesses Chakram, Patil, Schwab, Flanz and Bhave were among those interviewed by Cornell's investigators in connection with the allegations that he had violated the University's Romantic and Sexual Relationships Policy; and further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

104.   Denies the allegations set forth in paragraphs 380 and 381 of the Complaint, and affirmatively states that pursuant to applicable University practice both plaintiff and Jane Roe had the opportunity to secure guidance from a University-supplied advocate.

105.   States in response to the allegations set forth in paragraph 383 of the Complaint that Cornell policy provides for advisors to be made available to faculty members accused of Policy 6.4 violations, but not for other alleged acts of misconduct; further states upon information and belief that in this situation plaintiff retained or had the opportunity to retain personal counsel to assist him at all pertinent stages of the investigative process; and affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy, or that its findings were not adequately supported, such implication is

unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

106.   States in response to the allegations set forth in paragraphs 384 through 388 of the Complaint that to the extent these allegations purport to characterize or quote from documents, the Court is respectfully referred to the sources for their complete and contextual content, and further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

107.   States in response to the allegations set forth in paragraphs 390 and 391 of the Complaint that in late September 2014, on or about September 25, Jane Roe disclosed to Professor Patterson that she had been involved in a sexual relationship with plaintiff while she was his advisee and at Cornell, and that she wished at that time to remain anonymous and that the prior sexual relationship not be disclosed; to the extent these allegations purport to characterize the content of an interview with Professor Patterson Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

108.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 393 through 400 of the Complaint, further states that to the extent these allegations purport to characterize, and in part quote from, the content of an interview

32

with Srivatsan Chakram Cornell respectfully refers the Court to the source for its complete and contextual content, notes that at no time did Chakram avail himself of any of the complaint mechanisms available at Cornell to complain about Roe's allegedly improper conduct and communications, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

109.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 402 through 411 of the Complaint, further states that to the extent these allegations purport to characterize, and in part quote from, the content of an interview with Yogesh Patil Cornell respectfully refers the Court to the source for its complete and contextual content, notes that at no time did Patil avail himself of any of the complaint mechanisms available at Cornell to complain about Jane Roe's allegedly improper conduct and communications, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

110.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 413 through 416 of the Complaint, further states that to the extent that these allegations purport to characterize, and in part quote from, the content of an interview with Mohammad Hamidian Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of

33

University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

111.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 418 and 420 through 424 of the Complaint, further states that to the extent that these allegations purport to characterize, and in part quote from, the content of interviews with Jane Roe and Eliza Buhrer-Kapit, and related communications, Cornell respectfully refers the Court to the sources for their complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

112.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 426 of the Complaint, further states that to the extent that these allegations purport to characterize comments made during the interview with Eliot Kapit, Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

113.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 428 through 430 of the Complaint, further states that to the extent these allegations purport to characterize comments made during the interview with Swati

Singh, Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

114.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 431 through 434 of the Complaint, except admits that as part of the thorough and complete investigation Cornell's investigators, with Jane Roe's consent, secured relevant protected health information, and to the extent the allegations purport to characterize certain contents of that protected health information, or related communications, Cornell respectfully refers the Court to the sources for their complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

115.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 436 of the Complaint, further states that to the extent that these allegations purport to characterize comments made during the interview with Sunil Bhave, Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

35

116.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 438 through 453 of the Complaint, except admits that plaintiff repeatedly denied having had sex with Jane Roe, notes that plaintiff was found to have lied to the investigators during the investigation, further states that to the extent that these allegations purport to characterize comments made during the interview with plaintiff, Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

117.    Admits in response to the allegations set forth in paragraphs 454 and 459 through 462 of the Complaint that the investigation did not proceed under University Policy 6.4, and notes that the findings made in connection with the investigation that resulted in sanctions against plaintiff related solely to his violation of the Cornell Romantic and Sexual Relationships Policy, and to his having lied to the investigators during the course of that investigation.  (*See* Exhibits 7, 8, 13).

118.    Denies the allegations set forth in paragraphs 455 and 456, and notes that the investigation properly proceeded as part of the Dean's assessment of Roe's complaint that plaintiff had committed serious acts of misconduct, including violations of the University's Romantic and Sexual Relationships Policy.

119.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 457, 458 and 463 through 470 of the Complaint, further states that to the extent that these allegations purport to characterize comments made during the interview

with plaintiff, or in related communications, Cornell respectfully refers the Court to the sources for their complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

120.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 471 through 473 of the Complaint, further states that to the extent that these allegations purport to characterize the content of certain documents, Cornell respectfully refers the Court to the sources for their complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

121.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 475 of the Complaint, further states that to the extent these allegations purport to characterize comments made during an interview with Jane Roe, Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

122.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 477 through 480 of the Complaint, further states that to the extent that these allegations purport to characterize comments made during the interview with Scott Flanz, Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

123.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 482 of the Complaint, further states that to the extent that these allegations purport to characterize comments made during the interview with Professor Stamper-Kern, Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

124.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 484 through 489 of the Complaint, further states that to the extent that these allegations purport to characterize comments made during the interview with Professor Schwab, Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or

that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

125.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 491 through 500 of the Complaint, further states that to the extent that these allegations purport to characterize comments made during the interview with Shannon Harvey, Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

126.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 503 of the Complaint, further states that to the extent that these allegations purport to characterize comments made during the interview with Professor Ralph, Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

127.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 505 and 506 of the Complaint, further states that to the extent these allegations purport to characterize comments made during the interview with Collin Reynolds, Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply

that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

128.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 507 through 520 of the Complaint, further states that to the extent these allegations purport to characterize e-mail communications between plaintiff and Cornell's investigators, Cornell respectfully refers the Court to the sources for their complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

129.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 522 through 526 of the Complaint, further states that to the extent these allegations purport to characterize comments made during the interview with Kasturi Saha, Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

130.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 528 through 530 of the Complaint, further states that to the extent these allegations purport to characterize comments made during the interview with Professor Campbell, Cornell respectfully refers the Court to the source for its complete and

contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

131.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 531 through 535 of the Complaint, further states that to the extent these allegations purport to characterize e-mail communications from plaintiff, Cornell respectfully refers the Court to the sources for their complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

132.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 536 of the Complaint, except admits that as part of their thorough and comprehensive investigation Cornell's investigators reviewed certain laboratory logs.  (*See* Exhibit 13 at pages 48-50 of 63).

133.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 537 through 549 of the Complaint, further states that to the extent these allegations purport to characterize, or quote from, the content of certain e-mail communications, Cornell respectfully refers the Court to the sources for their complete and contextual content, and affirmatively states that to the extent plaintiff seeks to imply the investigative process was unfair, unlawful or violative of University policy or that its findings were

not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

134.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 553 through 558 of the Complaint, further states that to the extent these allegations purport to characterize various documents, Cornell respectfully refers the Court to the sources for their complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

135.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 560 through 562 of the Complaint, further states that to the extent these allegations purport to characterize an interview with Jane Roe, Cornell respectfully refers the Court to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

136.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 563 and 564 of the Complaint, and states that to the extent these allegations purport to characterize or quote from the content of a document, the Court is respectfully referred to the source for its complete and contextual content, and the University further affirmatively states that to the extent plaintiff seeks to imply that the investigative process

was unfair, unlawful or violative of University policy or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

137.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 565 through 571 and paragraph 573 of the Complaint, further states that to the extent these allegations purport to characterize correspondence allegedly received by Cornell's Tenure Review Committee, Cornell respectfully refers the Court to the source for its complete and contextual content, and further affirmatively states that to the extent plaintiff seeks to imply that the tenure review process was unfair, unlawful or violative of University policy, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 69 of this Answer.

138.    States in response to the allegations set forth in paragraph 582 of the Complaint that pursuant to relevant provisions of Policy 6.4 Roe's allegations of sexual assault, occurring more than a year after the date she last was advised by plaintiff, were determined to be time-barred; and further states that the determination of timeliness related to Roe's sexual assault allegation had no impact on the investigation into Roe's allegation that she had been in a long term, undisclosed romantic and sexual relationship with plaintiff, or on the University's ability to evaluate whether plaintiff violated Cornell's Romantic and Sexual Relationships Policy as a result of that long-term, undisclosed relationship.  The University also affirmatively states that the September 25, 2015 investigative Report, supported by more than 1,000 pages of documentary evidence, amply supported the misconduct findings against plaintiff as detailed in Exhibit 13, and further affirmatively asserts that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy, that its findings were not adequately supported,

43

or that the investigative report was inadequate, incomplete, unfair or biased, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

139.    A true and correct copy of Appendix A to the September 25, 2016 Report is attached as Exhibit 24.

140.    A true and correct copy of Appendix B to the September 25, 2016 Report is attached as Exhibit 25.

141.    A true and correct copy of Appendix C to the September 25, 2016 Report is attached as Exhibit 26.

142.    Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 585 of the Complaint, further states that to the extent these allegations purport to characterize correspondence allegedly received by Cornell's Tenure Review Committee, Cornell respectfully refers the Court to the source for its complete and contextual content, notes that the alleged communication addressed to Cornell's Tenure Appeals Committee was not claimed to have been forwarded to or shared with the Cornell investigators reviewing Roe's misconduct allegations against plaintiff, and further affirmatively states that to the extent plaintiff seeks to imply the tenure review process or the investigative process was unfair, unlawful or violative of University policy, that its findings were not adequately supported, or that the investigative report was inadequate, incomplete, unfair or biased, such implications are unwarranted and not legally cognizable for the several reasons set forth in paragraphs 43 and 69 of this Answer.  (*See* Exhibits 1, 2, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 24, 25, 26).

143.    States in response to the allegations set forth in paragraph 589 of the Complaint that Jane Roe's prior complaint about plaintiff's alleged misuse of her name had been resolved by

plaintiff's agreement to modify the name as referenced on the website he controlled, and that closed matter was unrelated to Roe's allegations that she had been engaged in a long term, undisclosed sexual relationship with plaintiff.  The University further affirmatively asserts that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy, that its findings were not adequately supported, or that the investigative report was inadequate, incomplete, unfair or biased, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

144.    Admits the allegations set forth in paragraph 621 of the Complaint.  (*See* Exhibit 7).

145.    States in response to the allegations set forth in paragraphs 622 and 623 of the Complaint that to the extent these allegations purport to characterize or quote from the content of Dean Ritter's October 6, 2015 letter, the Court is respectfully referred to the source for its complete and contextual content.

146.    States in response to the allegations set forth in paragraphs 624 and 625 of the Complaint that to the extent these allegations purport to characterize or quote from the content of the Tenure Appeals Committee's December 16, 2015 communication, the Court is respectfully referred to the source for its complete and contextual content, and affirmatively states that the Tenure Appeals Committee in its December 16 communication rejected two of three grounds plaintiff pursued on appeal; thereafter found that the Dean adequately addressed the third and final ground plaintiff had pursued on appeal by eliminating the identified deficiency through appropriate redaction of the tenure dossier; and notes that the December 16, 2015 determination of the Tenure Appeals Committee had no impact on the February 16, 2016 or May 3, 2016 determinations ultimately denying plaintiff's tenure application at Cornell.  (*See* Exhibits 17, 18).  Cornell further

45

affirmatively states that to the extent plaintiff seeks to imply that the tenure review process was unfair, unlawful or violative of University policy, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 69 of this Answer.

147.   Admits in response to the allegations set forth in paragraph 626 of the Complaint that Dean Ritter, consistent with University policy, convened an *ad hoc* committee, advisory to the Dean, to review the tenure dossier of plaintiff after it had been redacted in a manner appropriately addressing the sole deficiency identified in December 2016 by the Tenure Appeals Committee, and affirmatively states that the Tenure Appeals Committee subsequently determined that it had no concerns with the manner in which the tenure dossier had been redacted, and no concerns with the manner in which Dean Ritter remediated the deficiency that the Committee previously had identified.  Cornell further affirmatively states that to the extent plaintiff seeks to imply that the tenure review process was unfair, unlawful or violative of University policy, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 69 of this Answer.

148.   States in response to the allegations set forth in paragraphs 627 and 628 of the Complaint that to the extent these allegations purport to characterize the content of the *ad hoc* committee's advisory recommendation or Dean Ritter's February 16, 2016 determination, attached as Exhibit 18, the Court is respectfully referred to the sources for their complete and contextual content, and affirmatively states that the *ad hoc* committee's advisory recommendation was found to have violated long-standing University tenure policy by incorporating commentary on, and information about, scholarly work completed after the closure date of plaintiff's tenure dossier, and further affirmatively states that to the extent plaintiff seeks to imply that the tenure review process, or the outcome of that process was unfair, unlawful or violative of University policy, such

46

implication is unwarranted and not legally cognizable because plaintiff's tenure application ultimately was denied by Cornell's Provost in a May 3, 2016 determination based upon plaintiff's inadequate record of scholarly achievement, and for the several reasons set forth in detail in paragraph 69 of this Answer.

149.     Admits in response to the allegations set forth in paragraph 631 of the Complaint that in a determination dated May 3, 2016 [Exhibit 17], Cornell's Provost Michael Kotlikoff denied plaintiff's application for tenure, and agreed in this regard with Dean Ritter's February 16, 2016 determination, which has been submitted as Exhibit 18.

150.     States in response to the allegations set forth in paragraphs 632 through 636 that upon the denial of his tenure application plaintiff brought suit against Cornell and Dean Ritter in the Supreme Court for the State of New York, County of Schuyler and that an Order improvidently issued from Acting Supreme Court Justice and County Court Judge Richard Rich, dated November 23, 2016, to which the Court is respectfully referred for its complete and contextual content. Cornell further affirmatively states that the improvident November 23 Order was reversed in all respects,  and plaintiff's lawsuit was dismissed in all respects, by unanimous Order of the Appellate Division, Third Department, dated May 10, 2018 [*see* Exhibit 14], as referenced more fully in paragraph 69 of this Answer.

151.     In addition to the determinative, final Orders of the Appellate Division [*see* Exhibits 14, 15 and 16] and of the Supreme Court, Schuyler County [Exhibits 1 and 2] that issued in plaintiff's prior, failed litigation against Cornell and are referenced in paragraph 69 of this Answer, he also unsuccessfully pursued claims against the University before the New York State Division of Human Rights that were premised upon factual allegations mirrored in the Complaint in this action.

152.    A true and correct copy of plaintiff's Complaint filed with the State Division of Human Rights, as amended on August 2, 2018, is attached as Exhibit 27.

153.    A true and correct copy of the December 31, 2018 determination of the State Division of Human Rights, finding no probable cause to credit the Complaint plaintiff submitted to the State Division, is attached as Exhibit 28.

154.    The time to challenge or contest this December 31, 2018 determination has passed, and thus the State Division's dismissal of plaintiff's Complaint also is a final determination adverse to him.

155.    States in response to the allegations set forth in paragraphs 637 through 644 of the Complaint that to the extent these allegations purport to characterize or quote from the content of certain letters, including Dean Ritter's February 6, 2017 letter [Exhibit 8], the Court is respectfully referred to the sources for their complete and contextual content, and further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy, or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer, and Cornell further affirmatively states that to the extent opinions expressed by a law professor, holding no position of authority either at Cornell or on the Appellate Division panel that unanimously found plaintiff's prior lawsuit to be meritless, differ from those of the Court which had the actual authority to consider and pass upon plaintiff's claims, the law professor's opinions are of no relevance or moment.

156.    Denies the allegations set forth in paragraphs 645 and 646 of the Complaint, but admits that an Order unanimously reversing Judge Rich's November 23, 2016 Order was issued by the Appellate Division, Third Department on May 10, 2018, and to the extent that plaintiff

48

seeks to characterize or quote from the dismissal Order, Cornell respectfully refers the Court to that Order [Exhibit 14] for its complete and contextual content.

157.    Admits in response to the allegations set forth in paragraph 647 of the Complaint that as of June 30, 2018, plaintiff's employment at Cornell ended, and he ceased being a member of the Cornell faculty at that point.

158.    States in response to the allegations set forth in paragraphs 654, 709 and 710 of the Complaint that plaintiff, directly and through third parties unrelated to Cornell, published or caused to be published the entirety of Dean Ritter's October 6, 2015 letter which adopted the findings made in the investigative Report [Exhibit 13], particularly including findings that plaintiff had been involved in a sexual relationship with a former graduate student, and affirmatively alleges that these acts of publication included submissions made by plaintiff to external faculty reviewers at a number of universities located throughout the United States [*see* Exhibit 31], as well as website postings and contributions to published media accounts of plaintiff's claims against Cornell.  (*See* Exhibits 29, 30, 34).

159.    Denies each and every other factual averment in plaintiff's Complaint, or portion thereof, not responded to in any foregoing paragraph of this Answer, and to the extent plaintiff intends section headings in the Complaint to constitute proper factual averments, which they do not, denies all assertions of wrongdoing or injury to plaintiff that may be set forth in those section headings.

## COUNT I

160.    Responds to the factual averments incorporated by reference in paragraph 658 of the Complaint as it has responded to each individual factual averment or allegation incorporated therein, and as set forth in paragraphs 1-159 of this Answer.

49

161.    States in response to the allegations set forth in paragraphs 659 through 662 of the Complaint that these allegations constitute conclusions of law, and contain no averment of fact to which a responsive pleading is required.   To the extent a response is deemed necessary, the University respectfully refers the Court to the referenced statute and regulations for their complete and contextual content, and states that to the extent plaintiff attempts to imply that the University acted unlawfully or improperly in this matter, Cornell denies any such attempted implication.

## COUNT II

162.    Responds to the factual averments incorporated by reference in paragraph 674 of the Complaint as it has responded to each individual factual averment or allegation incorporated therein, and as set forth in paragraphs 1-161 of this Answer.

163.    States in response to the allegations set forth in paragraphs 675 through 677 of the Complaint that these constitute conclusions of law, and contain no averment of fact to which a responsive pleading is required; to the extent a response is deemed necessary, the University respectfully refers the Court to the referenced statute and regulations for their complete and contextual content, and states that to the extent plaintiff attempts to imply that the University acted unlawfully or improperly in this matter, Cornell denies any such attempted implication.

164.    States in response to the allegations set forth in paragraph 679 of the Complaint that certain individuals employed by Cornell were aware that plaintiff self-identified as being of Indian origin, and affirmatively states that the University at all relevant times has employed, within its Department of Physics and within the College of Arts and Sciences, many persons who similarly self-identify, and that across the University literally hundreds of faculty and staff members similarly self-identify as Indian-American, of Indian origin, and/or of South Asian descent.

## COUNT III

165.    Responds to the factual averments incorporated by reference in paragraph 692 of the Complaint as it has responded to each individual factual averment or allegation incorporated therein, and as set forth in paragraphs 1-164 of this Answer.

166.    States in response to the allegations set forth in paragraphs 693 through 694 of the Complaint that these allegations constitute conclusions of law, and contain no averment of fact to which a responsive pleading is required; to the extent a response is deemed necessary, the University respectfully refers the Court to the referenced constitutional provision and statute for their complete and contextual content, and states that to the extent plaintiff attempts to imply that the University acted unlawfully or improperly in this matter, Cornell denies any such attempted implication.

167.    States in response to the allegations set forth in paragraph 696 of the Complaint that among the statutory provisions applicable to Cornell are those set forth in Article 57 of the New York Education Law, and affirmatively states that at all times relevant to this matter Cornell has been a private entity of higher learning, and has been held to be so repeatedly by courts having had occasion to pass upon the issue.

168.    States in response to the allegations set forth in paragraph 699 of the Complaint that the reasons for University Policy 6.4 include furtherance of "the university's commitment to creating a learning, living, and working environment free of bias, discrimination, harassment, and sexual and legal misconduct, and to meeting applicable legal requirements," and the Policy states that these legal requirements include "Title VII of the Civil Rights Act of 1964 (Title VII), Title IX of the Education Amendments of 1972 (Title IX), the Violence Against Women Reauthorization Act of 2013 (VAWA), the Jeanne Clery Disclosure of Campus Security Policy

and Campus Crime Statistics Act (the Clery Act), the New York State Education Law Article 129-B (NYS 129-B), the New York State Human Rights Law, and the Tompkins County Human Rights Law." Cornell affirmatively states that this Policy provision does not reference the 2011 DCL, although to the extent that document provided guidance intended to promote compliance with applicable law, the 2011 DCL would inform Cornell's review and application of the terms of Policy 6.4.

169.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 701 of the Complaint, and to the extent that these allegations purport to characterize the content of the investigatory report prepared by Cornell's investigators or documents related to that report, the Court is respectfully referred to the sources for their complete and contextual content.

170.    States in response to the allegations set forth in paragraph 705 of the Complaint that these constitute conclusions of law, and contain no averment of fact to which a responsive pleading is required; to the extent a response is deemed necessary, the University denies that plaintiff has been "falsely branded" as having improperly engaged in a romantic and sexual relationship with Jane Roe, and further affirmatively states that to the extent plaintiff seeks to imply that the investigative process was unfair, unlawful or violative of University policy, or that its findings were not adequately supported, such implication is unwarranted and not legally cognizable for the several reasons set forth in detail in paragraph 43 of this Answer.

## COUNT IV

171.    Responds to the factual averments incorporated by reference in paragraph 716 of the Complaint as it has responded to each individual factual averment or allegation incorporated therein, and as set forth in paragraphs 1-170 of this Answer.

172.   States in response to the allegations set forth in paragraph 717 of the Complaint that to the extent plaintiff purports to quote from the content of a communication from Dean Ritter, the Court is respectfully referred to the source for its complete and contextual content, and states that to the extent plaintiff attempts to imply that the communication is defamatory, Cornell denies any such attempted implication.

173.   Denies the allegations set forth in paragraph 718 of the Complaint, and affirmatively asserts that plaintiff himself published or caused to be published the allegedly defamatory letter [*see* Exhibits 29, 30, 31], depriving him of the legal ability to pursue this claim.

174.   The sources through which plaintiff published or caused to be published the entirety of the allegedly defamatory communication he now complains of include:

- Plaintiff's website, *Harassment @ Cornell Physics*, in the "Recent Press" section (*see* *https://sites.google.com/view/harassmentatcornellphysics/recent-press* (last checked March 3, 2019), which linked to an article that reprinted in its entirety the allegedly defamatory October 6, 2015 letter about which plaintiff complains. A true and correct copy of relevant excerpts from plaintiff's website is attached as Exhibit 29; and

- The June 13, 2017 edition of the *Cornell Daily Sun*, as part of an article created with plaintiff's active assistance, styled *Vengalattore v. Cornell: A Timeline* (*see* *https://cornellsun.com/2017/06/13/vengalattore-v-cornell-a-timeline* (last checked March 3, 2019). This is the same article that reprints in its entirety the allegedly defamatory October 6, 2015 letter about which plaintiff complains. A true and correct copy of the June 3, 2017 *Daily Sun* newspaper article is attached as Exhibit 30.

- In the fall of 2017, in connection with the new tenure review improvidently directed by the trial court, Vengalattore compiled materials to be sent to external reviewers at other universities as part of the process. He provided the October 6, 2015 letter he now complains of with that packet. True and correct copies of relevant excerpts from that packet prepare and disseminated by plaintiff are attached as Exhibit 31. *See especially* Ex. 31 at pp. 513-514.

## COUNTS V THROUGH XIII

175.    Cornell affirmatively states that none of the claims in Counts V through XIII of the Complaint (paragraphs 728 through 840, inclusive) are asserted against the University, and therefore no responsive pleading is required.  To the extent a responsive pleading is deemed necessary, Cornell will provide responses, upon information and belief, to those allegations below.

176.    Responds to the factual averments incorporated by reference in paragraphs 728, 738, 747, 756, 768, 781, 792, 804 and 820 of the Complaint as it has responded to each individual factual averment or allegation incorporated therein, and as set forth in paragraphs 1-174 of this Answer.

177.    States in response to the allegations set forth in paragraphs 729-732, 739-743, 748, 749, 750 through 752, 754, 755, 757-762, 766, 769-776, 778, 779, 782-788, 790, 793-800, 802, 805-816, 818, 821-826, 828-833, 835, 836 and 839 of the Complaint that these allegations constitute conclusions of law, and contain no averment of fact to which a responsive pleading is required; to the extent a response is deemed necessary, the University denies knowledge or information sufficient to form a belief as to the truth of these allegations, and further states that to the extent plaintiff purports to characterize or quote from various documents, the Court is respectfully referred to the sources for their complete and contextual content.

178.    States in response to the allegations set forth in paragraphs 737, 746, 767, 780, 791, 803, 819 and 840 of the Complaint that these allegations constitute conclusions of law and recitations of legal relief to which plaintiff claims entitlement, and contain no averment of fact to which a responsive pleading is required; to the extent a response is deemed necessary, the University denies that plaintiff has stated a viable or supportable legal claim against Cornell, and is not entitled to any relief whatsoever.

179.     Admits in response to the allegations set forth in paragraphs 827 of the Complaint that Cornell's students as well as the University receive substantial amounts of federal funding in support of the University's educational and research activities, and in support of the students' educational pursuits at Cornell.

180.     The provisions in plaintiff's "Wherefore" clause set forth plaintiff's characterization of the relief requested by him, which contain no averment of fact to which a responsive pleading is required; to the extent a response is deemed necessary, the University denies any wrongdoing, and further denies that plaintiff is entitled to any relief whatsoever in this action.

181.     The University denies all other allegations set forth in the various Counts asserted in the Complaint, or portions of allegations in the Counts pleaded in the Complaint, that are not specifically referenced above.

182.     Cornell sets forth below various defenses applicable or potentially applicable to one or more of the purported claims for relief in plaintiff's Complaint; in so doing, the University does not assume, or intend to infer assumption, of any burdens of proof or persuasion not imposed by governing law.

## CORNELL UNIVERSITY'S DEFENSES

### FIRST DEFENSE

183.     Plaintiff fails to state a viable claim for relief as against Cornell.

### SECOND DEFENSE

184.     At all relevant times, the University's actions were lawful and appropriate.

185.     At all relevant times, the University was acting in the reasonable belief that its actions were lawful and appropriate.

**THIRD DEFENSE**

186.     The University was acting in good faith and it objectively believed that its actions were in compliance with all applicable statutes as they existed at the time periods relevant to the allegations in the Complaint.

**FOURTH DEFENSE**

187.     The University's actions were undertaken without malice, either as defined at common law or as defined by governing constitutional principles.

**FIFTH DEFENSE**

188.     Plaintiff's claims against Cornell are barred by his affirmative misconduct while employed at Cornell, and which he failed to disclose to the University.

**SIXTH DEFENSE**

189.     One or more of plaintiff's claims against Cornell are barred by applicable statutes of limitation.

**SEVENTH DEFENSE**

190.     Plaintiff's claims in this action, premised upon the denial of his tenure application at Cornell and the outcome of the investigation into his violation of the University's Romantic and Sexual Relationships Policy, were litigated to final judgment in *Vengalattore v. Cornell University and Gretchen Ritter*, Schuyler County Index Number 16-119 and Appellate Division Docket Number 525492. *See* Exhibits 1, 2, 14, 15, 16.

191.     The final judgment in the *Vengalattore* state court proceeding, and the final orders preceding that judgment, which rejected plaintiff's challenges to the Cornell determinations upon which plaintiff's claims under Title IX, Title VI and 42 U.S.C. § 1983 are premised, bar his attempt to relitigate those claims in this action.

192.     Plaintiff's claims are barred by the doctrines of *res judicata* and claim preclusion.

**EIGHTH DEFENSE**

193.     Plaintiff's claims in this action, premised upon the denial of his tenure application at Cornell and the outcome of the investigation into his violation of the University's Romantic and Sexual Relationships Policy, were litigated to final judgment in *Vengalattore v. Cornell University and Gretchen Ritter*, Schuyler County Index Number 16-119 and Appellate Division Docket Number 525492. (*See* Exhibits 1, 2, 14, 15, 16).

194.     Among the issues necessarily decided in that *Vengalattore* state court proceeding and subsequent appeal were the propriety of the Cornell determinations denying plaintiff's tenure application at Cornell, and its separate determination finding him responsible for violating the University's Romantic and Sexual Relationships Policy.

195.     Plaintiff had a full and fair opportunity to litigate those matters in the *Vengalattore* state court proceeding and subsequent appeal, which was decided upon a fulsome factual record.

196.     True and correct copies of excerpts from the appellate record in *Vengalattore v. Cornell Univ. and Gretchen Ritter*, Docket No. 525492, which appellate record totaled 1,427 pages, are attached to this Answer as Exhibit 32.

197.     Plaintiff's claims are barred by the doctrines of collateral estoppel and issue preclusion.

**NINTH DEFENSE**

198.     One or more of plaintiff's claims against Cornell are barred because, through his improvident, unprofessional and unethical actions and communications, plaintiff has rendered himself defamation proof.

**TENTH DEFENSE**

199.    One  or  more  of  plaintiff's  claims  against  Cornell  are  barred  because  the communications he complains of are not defamatory, or reasonably capable of defamatory import.

**ELEVENTH DEFENSE**

200.    One  or  more  of  plaintiff's  claims  against  Cornell  are  barred  because  the communications he complains of are true.

**TWELFTH DEFENSE**

201.    One  or  more  of  plaintiff's  claims  against  Cornell  are  barred  because  the communications he complains of are non-actionable statements of opinion.

**THIRTEENTH DEFENSE**

202.    One or more of plaintiff's claims against Cornell are barred because he published or caused to be published the allegedly defamatory communication at issue in this action.

203.    Plaintiff's  publication  of  the  allegedly  defamatory  communication  at  issue preceded the time at which he alleges Cornell published that allegedly defamatory communication.

**FOURTEENTH DEFENSE**

204.    One or more of plaintiff's claims against Cornell are barred by the common interest privilege.

205.    Plaintiff cannot overcome this privilege because he cannot establish that any allegedly defamatory communication at issue in this action was motivated by malice, and was made in bad faith.

**FIFTEENTH DEFENSE**

206.    One or more of plaintiff's claims against Cornell are barred by the common law doctrine of reply.

207.    Plaintiff cannot establish that any allegedly defamatory communication was motivated by malice, and was not made in good faith.

**SIXTEENTH DEFENSE**

208.    One or more of plaintiff's claims against Cornell are barred by his status as a limited purpose public figure with respect to the allegations underlying said claims.

209.    True and correct copies of media articles and internet content reporting on plaintiff's status at and his disputes with Cornell, including content plaintiff himself has provided to the media sources, are attached as Exhibit 34.

210.    These articles include:

- *Vengalattore v. Cornell: A Timeline*, https://cornellsun.com/2017/06/13/vengalattore-v-cornell-a-timeline;

- *Two-Year Tenure Battle Between Cornell and Vengalattore Puts 'Flawed' Process in Spotlight*, https://cornellsun.com/2017/06/13/two-year-tenure-battle-between-cornell-and-vengalattore-puts-flawed-process-in-spotlight;

- *When a Court Overturns a Tenure Decision*, https://www.insidehighered.com/news/2017/05/24/professor-says-cornell-ignoring-his-rare-victory-tenure-dispute-case;

- *NY court: Cornell faces being held in contempt after denying physics professor tenure (twice)*, https://retractionwatch.com/2017/06/27/ny-court-cornell-faces-held-contempt-denying-physics-professor-tenure-twice;

- *Former assistant professor sues Cornell, U.S. Department of Education*, https://www.ithacajournal.com/story/news/local/2018/10/10/former-professor-sues-cornell-betsy-devos-and-education-department/1587755002;

- *Judge Orders Cornell to Review Tenure Denial for 'World-Class' Professor*, https://cornellsun.com/2017/05/25/judge-orders-cornell-to-review-tenure-denial-for-world-class-professor; and

- *Appeals Court Sides with Cornell in Tenure Dispute*, https://www.insidehighered.com/quicktakes/2018/05/11/appeals-court-sides-cornell-tenure-dispute (all last checked March 11, 2019).

211.    Plaintiff cannot establish that any allegedly defamatory communication was motivated by malice, and was not made in good faith.

### SEVENTEENTH DEFENSE

212.    No communication alleged to be defamatory constitutes actionable defamation *per se*.

213.    The defamation claims as against Cornell are not legally cognizable because plaintiff has failed to plead, and cannot establish, special damages related to the allegedly defamatory communication.

### EIGHTEENTH DEFENSE

214.    One or more of the claims raised by plaintiff against Cornell are not legally cognizable because under the circumstances his claims are violative of public policy.

### NINETEENTH DEFENSE

215.    The alleged injuries and damage purportedly incurred by plaintiff were caused solely or in substantial part by his culpable conduct.

### TWENTIETH DEFENSE

216.    One or more of plaintiff's claims against Cornell are barred because he has failed to mitigate his alleged damages.

WHEREFORE, defendant Cornell University demands Judgment dismissing all claims against it in the Complaint, together with the costs and disbursements incurred in the defense of this action, further awarding it the attorneys' fees and expenses incurred in addressing plaintiff's frivolous, previously adjudicated claims against it, and granting such other and further relief as this Court deems just and appropriate.

Dated: March 21, 2019

WARD GREENBERG HELLER & REIDY LLP

By: ___ s/ Thomas S. D'Antonio _____
       Thomas S. D'Antonio (Bar No. 510890)
       tdantonio@wardgreenberg.com
       Jeffrey D. Casey (Bar No. 520896)
       jcasey@wardgreenberg.com

1800 Bausch & Lomb Place
Rochester, New York  14604
Telephone:  (585) 454-0700
Facsimile:  (585) 423-5910

OFFICE OF UNIVERSITY COUNSEL,
 CORNELL UNIVERSITY
Madelyn F. Wessel, Esq.
Wendy E. Tarlow, Esq.
300 CCC Building
255 Garden Avenue
Ithaca, New York 14850
Telephone:  (607) 255-5124
mfw68@cornell.edu
wet2@cornell.edu

*Attorneys for defendant Cornell University*

61

TO:   Caleb Kruckenberg, Esq.
New Civil Liberties Alliance
1125 19th Street N.W.
Suite 450
Washington, D.C. 20036
Telephone: (202) 869-5217
*Caleb.kruckenberg@ncla.legal*

*Attorneys for plaintiff*


William Larkin, Esq.
Assistant United States Attorney
United States Attorney's Office for the
  Northern District of New York
P. O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
Telephone:  (315) 448-0672
Facsimile:  (315) 448-0689
*William.Larkin@usdoj.gov*

*Attorneys for defendants*
*United States Department of Education* and
*Hon. Betsy DeVos, as Secretary of Education*