Exhibit 3

# Campus
# Code of Conduct

*As of June 20, 2018*

 Cornell University

# CAMPUS CODE OF CONDUCT

**approved by the University Assembly on April 23, 2008**
**adopted by the Board of Trustees on May 24, 2008**
**amendments approved on 12 June 2009, 17 May 2011, 27 June 2011, 22 April 2012,**
**8 June 2012, 28 August 2014, 26 September 2014, 23 January 2017, 20 June 2018**

## Summary of Contents

TITLE ONE: STATEMENT OF PRINCIPLES AND POLICIES...................................................1
   Article I.   Fundamental Principles.............................................................................1
   Article II.   Supporting Policies ..................................................................................2
   Article III. Responsible Speech and Expression......................................................5
   Article IV. Amendment of Code ..............................................................................9
TITLE TWO: CONSTITUTIVE PROVISIONS ON JUDICIAL SYSTEM ...............................10
   Article I.   Judicial Jurisdiction ...............................................................................10
   Article II.   Judicial Offices .....................................................................................11
   Article III. Judicial Participants .............................................................................14
   Article IV. Judicial Boards.....................................................................................15
TITLE THREE: REGULATIONS FOR MAINTENANCE OF EDUCATIONAL
ENVIRONMENT ....................................................................................................................16
   Article I.   Applicability ..........................................................................................16
   Article II.   Violations ..............................................................................................17
   Article III. Procedures............................................................................................20
   Article IV. Penalties and Related Provisions .........................................................34
TITLE FOUR: REGULATIONS FOR MAINTENANCE OF PUBLIC ORDER ......................37
   Article I.   Applicability ..........................................................................................37
   Article II.   Violations ..............................................................................................38
   Article III. Procedures............................................................................................39
   Article IV. Penalties and Related Provisions .........................................................40
APPENDIX A: Additional Policies Appended To the Code.......................................................41
   Article I.    17 May 2011 Motion Regarding Procedures for Violations Involving Sexual
Violence and Sexual Assault ..............................................................................................41

Latest version available online: www.dfa.cornell.edu/policy/policies/campus-code-conduct

# Table of Contents

TITLE ONE: STATEMENT OF PRINCIPLES AND POLICIES ................................................1
    Article I.    Fundamental Principles...........................................................................1
        A. The Essential Purpose ...................................................................1
        B. The University's Role ....................................................................1
        C. The Principle of Freedom with Responsibility ...............................2
    Article II.    Supporting Policies.................................................................................2
        A. Basic Policies on University Conduct Regulation in Relation to Public Law
        Enforcement.......................................................................................2
        B. Other Policies on the University's Role in Public Law Enforcement..............................3
        C. Limitations and Exceptions............................................................3
    Article III.  Responsible Speech and Expression .......................................................5
        A. Public Speaking Events on Campus................................................5
        B. Protests and Demonstrations on Campus ......................................6
        C. Consultation Groups......................................................................9
    Article IV.  Amendment of Code ...........................................................................9
        A. Title Four .......................................................................................9
        B. Titles One, Two, and Three ...........................................................9
TITLE TWO: CONSTITUTIVE PROVISIONS ON JUDICIAL SYSTEM ...............................10
    Article I.    Judicial Jurisdiction..............................................................................10
        A. Jurisdiction in General.................................................................10
        B. Jurisdiction over Students ............................................................10
        C. Jurisdiction over Faculty and Other Employees ..........................10
    Article II.    Judicial Offices ....................................................................................11
        A. Office of the Judicial Administrator..............................................11
        B. Office of the Judicial Codes Counselor.........................................13
    Article III.  Judicial Participants .............................................................................14
        A. Complainant and Victim ..............................................................14
        B. Defense Counsel or Advisor.........................................................14
    Article IV.  Judicial Boards.....................................................................................15
        A. University Hearing Board .............................................................15
        B. University Review Board ..............................................................15
        C. Pool of Board Members ...............................................................15
TITLE THREE: REGULATIONS FOR MAINTENANCE OF EDUCATIONAL
ENVIRONMENT ............................................................................................................16
    Article I.    Applicability .........................................................................................16
    Article II.    Violations ............................................................................................17
        A. Listing...........................................................................................17
        B. Interpretation ................................................................................19
    Article III.  Procedures............................................................................................20
        A. Initial Investigation ......................................................................20
        B. Interim Measures..........................................................................20

       C. Summary Decision or No Action ................................................................22
       D. Formal Charges.........................................................................................23
       E. Hearing Procedures ...................................................................................25
       F. Appeal Procedures.....................................................................................30
       G. General Procedures ...................................................................................33
    Article IV.  Penalties and Related Provisions ..............................................34
       A. Penalties ...................................................................................................34
       B. Remedies ..................................................................................................36
       C. Compliance...............................................................................................37
       D. Other Proceedings ....................................................................................37
TITLE FOUR: REGULATIONS FOR MAINTENANCE OF PUBLIC ORDER ......................37
    Article I.     Applicability ...............................................................................37
    Article II.    Violations ...................................................................................38
       A. Listing ......................................................................................................38
       B. Interpretation ...........................................................................................39
    Article III.  Procedures..................................................................................39
       A. Immediate Enforcement ...........................................................................39
       B. Disciplinary Process.................................................................................40
    Article IV.  Penalties and Related Provisions ...............................................40
APPENDIX A: Additional Policies Appended To the Code.............................................41
    Article I.     17 May 2011 Motion Regarding Procedures for Violations Involving Sexual
Violence and Sexual Assault ......................................................................................41

# TITLE ONE: STATEMENT OF PRINCIPLES AND POLICIES

*Preamble.* Conduct of the members of the Cornell community is an appropriate area of concern for the University. This statement sets forth several basic principles and important policies regarding the scope, manner, and standards of regulating that conduct.

This Title is necessarily general. Its purpose is to inform the Cornell community of the general principles and policies upon which the Cornell judicial system operates, and to give general guidance to the judicial system as it handles specific cases arising under regulations authorized by the Board of Trustees, including legislation adopted by the University Assembly (or its successor) and approved by the President as representative of the Board.

## Article I.      Fundamental Principles

### A. The Essential Purpose

The essential purpose of the University's governing of community conduct is to protect and promote the University community's pursuit of its educational goals. The University, as an educational institution, has a special set of interests and purposes, the protection and promotion of which are essential to its effective functioning. These interests, with respect to the governing of community conduct, include the following:

    1.  the opportunity of all members of the University community to attain their educational objectives;

    2.  the generation and maintenance of an intellectual and educational atmosphere throughout the University community; and

    3.  the protection of the health, safety, welfare, property, and human rights of all members of the University community, and the safety, property, and reputational interests of the University itself. These general interests, of course, are also the subject matter of the public laws of the state and nation.

### B. The University's Role

The University's role in regulating community conduct is distinguishable from society's. Therefore, the powers of the University's judicial boards shall be limited to the enforcement of University conduct regulations and shall not extend to the enforcement of public laws, except to the coincidental extent that such University conduct regulations are similar to provisions of the public law.

1

## C. The Principle of Freedom with Responsibility

1. The principle of freedom with responsibility is central to Cornell University. Freedoms to teach and to learn, to express oneself and to be heard, and to assemble and to protest peacefully and lawfully are essential to academic freedom and the continuing function of the University as an educational institution. Responsible enjoyment and exercise of these rights mean respect for the rights of all. Infringement upon the rights of others or interference with the peaceful and lawful use and enjoyment of University premises, facilities, and programs violates this principle.

2. The Campus Code of Conduct is the University community's code, and hence is the responsibility of all community members. All members have a duty to cooperate with University officials in this Code's operation and enforcement.

## Article II.      Supporting Policies

## A. Basic Policies on University Conduct Regulation in Relation to Public Law Enforcement

The following basic policies will apply in situations where misconduct violates both a University conduct regulation and the public law:

1. The following kinds of offenses are adjudicated in the public courts: all felonies, controlled substance offenses, motor vehicle moving violations, assaults upon a peace officer or resisting arrest, refusals by persons to identify themselves, as well as cases in which the complainant wishes to proceed in the courts and cases involving accused persons who are not members of the University community. Still, the Judicial Administrator has discretion to pursue even serious breaches of the law under the Campus Code of Conduct. Timely dealing with alleged misconduct is vital. Nevertheless, the Judicial Administrator should consider whether justice counsels withholding the exercise of University jurisdiction until public officials have disposed of the case by conviction or otherwise.

2. When the Judicial Administrator determines that misconduct does not constitute a serious breach of the law and that the interests of justice would be served by handling such misconduct within the University jurisdiction, he or she shall:

a. attempt to exercise jurisdiction in a manner to avoid dual punishment for the same act;

b. cooperate with public officials so that the exercise of University jurisdiction ordinarily will not be followed by public prosecution of the individual's misconduct; and

c. withhold the exercise of University jurisdiction, when prompt public prosecution is anticipated or is under way, until public officials have disposed of the case by conviction or otherwise.

3. Policies covering conduct that violates both a University conduct regulation and the public law, where feasible, should be based on jurisdictional understandings and procedures jointly developed and periodically reviewed by University and local officials. To the maximum extent feasible, jurisdictional understandings shall be made known to the University community.

## B. Other Policies on the University's Role in Public Law Enforcement

1. When public officials apprehend an individual for a violation of the public law, whether or not the misconduct is also a violation of a University conduct regulation, the University shall neither request nor agree to specially advantageous disposition of an individual's case by police, prosecutors, or judges solely because of that individual's status as a member of the University community. Nonetheless, the University stands ready to assist student defendants and to cooperate with public officials to promote equitable application of the law. Should a student charged with law violation request assistance from the University, a representative of the Office of the Dean of Students or Office of the University Ombudsman will meet with such student and may advise him or her and, if requested, may facilitate the student's retention of suitable counsel. If the law violation does not also constitute a violation of a University conduct regulation, and if the student defendant consents, the University ordinarily will cooperate with the request of appropriate law enforcement officials for programs of probation or rehabilitation. Notwithstanding the above provisions, if the prosecution, the complainant, and the accused all consent, minor breaches of the law may be handled exclusively within the University jurisdiction, except in case of repeat offenses.

2. The University's cooperation with law enforcement, at the request of public officials, shall be exercised in each particular case with a view to safeguarding the interests of the educational community, especially that community's confidence in the University.

## C. Limitations and Exceptions

1. Overriding Laws

a. It is understood that the Board of Trustees, under sections 5708 and 5709 of the New York Education Law, is responsible for the protection of the grounds, buildings, and property of Cornell University, including state property under its supervision and control, and for the prevention of crime and the enforcement of law and order. These and other statutory provisions regarding law enforcement led to the creation of the Cornell Police, staffed by peace officers who are deputy sheriffs of the county. Under section 6430 of the New York Education Law, adopted in 1969, the Board must also adopt regulations for the maintenance of public order and provide penalties in addition to those for the same misconduct under the New York Penal Law. State law makes the trustees responsible for the enforcement of such rules and regulations as the Board makes from time to time. These state laws cannot be superseded by actions of the Board, nor may the Board evade its legal responsibilities by delegation.

b. Under state law, public servants who knowingly refrain from performing a duty imposed upon them by law, or a duty clearly inherent in the nature of their office, may be guilty of a criminal offense. Accordingly, any inflexible internal rule that precludes a peace officer from making an arrest when a crime has occurred would be contrary to law. It is understood, however, that as to minor offenses, law enforcement authorities are permitted a degree of discretion in determining whether to prosecute an offender or to pursue some other appropriate remedy when an alternative disposition would further the interests of justice. Accordingly, the policies enumerated above are understood to constitute policy guidelines to be applied in good faith, and not prohibitions upon the exercise of the law enforcement responsibilities vested in the Board of Trustees and exercised by its authorized peace officers. That is, such peace officers must retain the sole discretion to determine the circumstances in which the public laws must be enforced.

## 2. Presidential Overrides

### a. Public Disorder

The President may alter or suspend the implementation of the policies enumerated above when the President finds that the Regulations for Maintenance of Public Order, constituting Title Four hereof, are insufficient to maintain public order and when there is an imminent and sufficient threat to the University community's pursuit of its educational goals to warrant such action. Any such action of the President shall be subject to and consistent with the applicable laws of the state and nation.

(1) Should the President exercise such authority, such action shall be made known to the University community immediately, together with a statement explaining the basis of such action. Such deviation from the implementation of said policies should last no longer than necessary to alleviate any pending threat.

(2) It is not intended that the President will seek to suspend the general application of said policies except in cases in which the President finds a threatened imminent and general breakdown in the University's capacity to enforce law and order. It is not intended, therefore, that the President will exercise such authority in cases involving individual misconduct.

### b. Grave Misconduct

An individual's exceptionally grave misconduct, particularly misconduct that threatens or attempts to cause physical or mental harassment, may demonstrate such flagrant disrespect for the basic integrity and rights of others as to call into question continuance of the individual's membership in the University community, because (1) his or her presence would adversely affect the ability of others to pursue their educational goals or (2) his or her misconduct grossly violated standards of behavior requisite to the maintenance of an educational community. In the event of such conduct, if the conduct is not covered by any specific provision of a University regulation or statement regulating conduct or if the relevant regulation does not provide a sanction adequate to protect the safety of the University community, nothing in this Code shall preclude the President or his or her

4

designee, under the authority of the Board of Trustees as expressed in the University Bylaws, from taking appropriate and lawful action. But such authorization constitutes a procedure parallel to this Code, not an authority to review or revise a decision made under this Code.

## Article III.    Responsible Speech and Expression

### A. Public Speaking Events on Campus

#### 1. Arrangements for Invited Speakers

Any recognized campus organization is free to invite a speaker to address its own membership in a private, closed meeting under ground rules set by the inviting organization. A closed meeting can serve many legitimate purposes, including creation of a more informal atmosphere, maximizing the opportunity of organization members to ask questions, allowing the speaker to talk "off the record," and ensuring a particular kind of discussion because of advance preparation by the organization's membership. If a speaker is likely to attract widespread interest among nonmembers, however, the group would often be wise to open the meeting to nonmembers, including those with views contrary to those of the speaker. Nevertheless, the University does not insist that the group do so.

If the group chooses to open the event to the University community, it should seek to arrange adequate space to accommodate the reasonably expected audience. In such a public event, the inviting group may also decide whether there is to be a question-and-answer period and, if so, its length and general format. The speaker or moderator should also be allowed reasonable discretion in requiring questioners to be concise, not to abuse the speaker, and not to monopolize the proceedings or otherwise interfere with their purpose. If a question-and-answer period is held, however, neither the speaker nor the moderator should be allowed in recognizing speakers to discriminate on such grounds as ethnicity, gender, national origin, political persuasion, race, religion, sexual orientation or affectional preference, or other suspect or invidious categories. By the same token, at a public event, the sponsoring organization should not be allowed to bar attendance or give preferred seating on the basis of such suspect or invidious categories.

Only members of the Cornell community may hold or host events on Cornell-owned property. External groups must be sponsored by a member of the Cornell community and the sponsor must have a representative present during the actual event. For these purposes, appropriate Cornell sponsors are: registered student organizations, departments and units of the university, and university-sponsored organizations and offices (e.g., Dean of Faculty, Faculty Senate, University Assembly, etc.).

#### 2. Disruption of Invited Speakers

Freedom of speech, within commonly accepted limits of safety and civility, is a paramount value in a university community. In a university community, as in society as a whole, freedom of speech cannot be absolute. Speech that is libelous, or that incites a crowd to riot, deserves no protection. Perhaps no one, in real life, has ever falsely shouted "Fire!" in a crowded theater, but surely no one has a right to do so. Within such commonly accepted limits, however, freedom of speech should be the paramount value in a university community. Because it is a special kind of community, whose purpose is the discovery of truth through the practice of free inquiry, a university has an essential dependence on a commitment to the values of unintimidated speech. To curb speech on the grounds that an invited speaker is noxious, that a cause is evil, or that such ideas will offend some listeners is therefore inconsistent with a

university's purpose. One may argue against inviting a speaker on the grounds that the speaker has nothing of importance to say. But once members of the university community extend an invitation, others may not disrupt the speech on the grounds that they find it stupid, immoral, or dangerous.

Those who dislike what an invited speaker is saying also have rights. The rights include distributing leaflets outside the meeting room, picketing peacefully, boycotting the speech, walking out, asking pointed questions, and, within limits set by the moderator, expressing displeasure with evasive answers. Those who oppose a speaker may thus make their views known, so long as they do not thereby interfere with the speaker's ability to be heard or the right of others to listen. Name-calling and the shouting of obscenities, even when they are not carried so far as to abridge freedom of speech, are nevertheless deplorable in a community devoted to rational persuasion and articulate controversy. Civility is a fragile virtue, but one upon which a university ultimately depends.

The American conception of academic freedom includes the principle that professors may participate in political demonstrations and speak out on controversial issues without jeopardizing their employment. In a campus setting, however, academic freedom carries with it certain responsibilities. Scholars not only should respect the professional demands of their discipline and the pedagogical requirements of the teacher-student relationship, but also should not encourage efforts to abridge the free expression of controversial viewpoints. As citizens, professors may or may not be especially solicitous about freedom of speech; as scholars, they are morally bound to defend it. Professors traduce their calling by any deliberate action demonstrating contempt for freedom of speech.

Civil disobedience is not a ground for exonerating one from penalties for violating conduct regulations regarding free expression, nor should it be a circumstance mitigating the penalty. Although nonviolent civil disobedience can be an honorable way of expressing moral outrage, in a university community where the free flow of ideas is paramount, it is contradictory and misguided to employ it to deny that very right of expression to another.

## B. Protests and Demonstrations on Campus

### 1. Protected Expressive Conduct in General

The University will treat as within the basic protection of a right to free expression such lawful conduct as satisfies the following tests, where lawful means not in violation of state or federal law. The conduct should (a) be intended for expressive purposes, (b) be reasonably understood as such by the University community, and (c) comply with such reasonable time, place, and manner restrictions as are consistent with the other provisions of this Article and as may be authorized from time to time by the President.

Even in regard to conduct that is intentionally expressive and perceived as such, the University may impose reasonable time, place, and manner restrictions on such conduct to preserve other important values and interests of the University community. An accused charged with such conduct may assert as a defense that he or she has complied with such time, place, and manner restrictions.

All protection and regulation of expressive conduct should be content-neutral. A group's persuasion or point of view should have no bearing on the grant of permission or the conditions regulating that group's expressive conduct.

## 2. Symbolic Structures

Symbolic structures will be allowed in accordance with an express permit issued by the Vice President for Student and Academic Services or other presidential designee. Such structures must be temporary and must conform to the conditions contained in the permit. In regulating by permit the duration, size, location, and other features of symbolic structures, the administration will be guided by attention to the following, or similar, kinds of University community interests that such structures could infringe upon:

(a) protecting health and safety;

(b) preventing damage and risk of damage to University grounds and property;

(c) preserving unimpeded mobility on pathways and streets, entrance to and departure from buildings, and unimpeded mobility within buildings;

(d) providing for competing uses of campus grounds and property;

(e) avoiding interference with other University activities;

(f) reasonably limiting costs to the University of increased campus police protection, potential University liability, insurance coverage, and cleanup and repair after an event; and

(g) preserving campus aesthetic values.

In addition to such limits, other restrictions on symbolic structures may also be imposed. For example, depending on experience and context, the President may impose any of the following restrictions: requiring portability so that structures do not remain overnight; prohibiting overnight sleeping in structures; and requiring continual daytime physical presence of persons responsible for the expressive activity.

## 3. Demonstrations Not Involving Structures

Outdoor picketing, marches, rallies, and other demonstrations are traditional and legitimate forms of self-expression and dissent on campus. Such activities are allowed so long as demonstrators do not disrupt other functions, including, without limitation, regular and special curricular activities, extracurricular activities, academic processions and events, conduct of University business, and employment interviews. The right to free expression here, as in other contexts, requires respect for the rights of others. Outdoor picketing, marches, rallies, and other demonstrations generally pose no threat of long-lasting exclusive use of University grounds or property. No university permit is required for such outdoor activities. The presence of a counter-protest does not itself constitute a disruption to a University function or

authorized event. Moreover, those who oppose a speaker may thus make their views known. Everyone has the right to be heard and to listen to others.

Use of public address systems and amplified sound will be permitted without prior approval during the hours of 12:00 p.m. and 1:00 p.m., at Ho Plaza and in front of Day Hall. Public address systems and amplified sound will be permitted in other outdoor locations only with prior approval. Approval may be obtained using the Event Registration Form located at: https://activities.cornell.edu/EventReg/.

As to indoor demonstrations such as sit-ins, owners of private property, and even the administrators of public property, are not required to permit the occupation of buildings by those who are not present to transact the business or pursue the other purposes that the offices in the building are intended to serve. Classrooms, libraries, laboratories, living units, and faculty and administrative offices are dedicated to specific purposes, which the University must be free to pursue without disruption. The law of trespass and the right of free speech are not mutually exclusive and, indeed, have always coexisted in our legal system.

Accordingly, the President may authorize regulations permitting the use of specific portions of University buildings, provided that such regulations shall not permit the disruption of classrooms, libraries, laboratories, living units, or offices and shall ensure the continuing conduct of University business. No such use shall be permitted beyond 5:00 p.m. or the close of normal business hours, whichever is earlier. Nevertheless, as pointed out elsewhere in this Article, University rooms set aside for the purpose of gatherings involving speech and expression should not be licensed in a manner to deny access to groups sponsoring an unpopular point of view.

Deans, directors, or other heads of each college, school, or other academic unit described in Article I, section 7, of the University Bylaws may submit proposals to the President on the promulgation of such regulations for the use of University buildings assigned to the use of such college, school, or unit. No such regulation shall take effect or continue in effect without the approval of the President.

The President may promulgate regulations governing the use of Day Hall or any other University building not otherwise governed by such regulations. As a practical matter, although demonstrations inside virtually any University building would be disruptive, the working space within Day Hall is especially compact. Almost any assemblage of demonstrators inside the building could be disruptive to Day Hall staff and to others, especially students, seeking access to a Day Hall office for normal business purposes.


4. Disruption of Recruiters

As long as a recruiter is on campus in accordance with ordinary University processes, a demonstration or protest that intentionally disrupts recruitment activity should be and is a violation of University conduct regulations and should not be tolerated.

The right to express one's views should not extend so far as to infringe upon another University community member's right to participate in a recruitment interview or information session with a recruiter who is on campus in accordance with ordinary University processes.

## C. Consultation Groups

The President is authorized and encouraged to appoint a standing committee to study and report to the President on significant policy issues concerning the protection of freedom of expression on campus. The committee should study any issue presented to it by the President. It should also receive petitions or inquiries from members of the University community, but should limit its attention to issues that involve important matters of a policy nature. Thus, the committee could study an individual's charge that University officials are not adequately enforcing the policy against disrupting public speakers or that they are imposing unreasonable constraints upon the right to protest or demonstrate peacefully and lawfully on campus. The committee should not function as an adjudicatory body, or receive any complaint about or continue considering any issue arising from a campus incident after a disciplinary proceeding growing out of that incident and involving the same or similar issues has been initiated, until any such disciplinary proceeding has been completed. Any report issued by the committee should go to the President and should be available thereafter to the University community. The report would be advisory only.

The President may consult with the Executive Committee of the University Assembly, or appoint an ad hoc committee to advise the President, concerning appropriate administrative policy in the face of protest and demonstrations.

## Article IV.    Amendment of Code

### A. Title Four

The Regulations for Maintenance of Public Order were adopted by the Board of Trustees and may be amended only by action of the Board of Trustees, upon the recommendation of or after consultation with the University Assembly.

### B. Titles One, Two, and Three

All other Titles of this Code may be amended by the University Assembly, subject to the approval of the President.

# TITLE TWO: CONSTITUTIVE PROVISIONS ON JUDICIAL SYSTEM

**Article I.      Judicial Jurisdiction**

## A. Jurisdiction in General

All violations of the Campus Code of Conduct by a student, member of the University faculty, other employee of the University, or University-registered organization shall be processed through the campus judicial system, consistent with the principles stated in Article II of Title One, except as otherwise provided in Section C below.

## B. Jurisdiction over Students

1. The term student shall be interpreted to mean any person, whether or not incidentally on the University payroll, who is currently registered with the University as:

   a. a degree candidate in any of Cornell's undergraduate or graduate divisions;

   b. a special student in the undergraduate divisions; or

   c. a non-degree-candidate in the graduate school.

2. The term student shall be interpreted to mean also persons not officially registered, and not faculty members or other University employees, if they are:

   a. currently enrolled in or taking classes at the University;

   b. currently using University facilities or property, or the property of a University-related residential organization, in connection with academic activities; or

   c. currently on leave of absence or under suspension from being a student of the University.

## C. Jurisdiction over Faculty and Other Employees

1. Faculty members and other University employees include those who are incidentally taking classes at the University.

2. The procedures of this Code shall not apply to faculty members or other University employees who are accused of employment-related misconduct. Instead, the applicable administrative process shall apply, such as that described in Cornell University Policy 6.11.3.

a. Should any accusation or complaint of a Code violation be made to or by a department head, dean, supervisor, or the Judicial Administrator and involve conduct by a faculty member or other University employee clearly arising in the course of employment, then the department head, dean, or appropriate University administrative authority shall determine whether there was a Code violation and shall also assess penalties and/or remedies where appropriate.

(1) The accused may make a jurisdictional appeal to the Judicial Administrator, i.e., raise a question whether the alleged conduct arose in the course of employment and so call for rechanneling into the judicial system.

(2) The accused may make an appeal on the merits of the administrative disposition through appropriate faculty channels or the employee grievance procedure, but not through the judicial system.

b. If an accusation or complaint of a Code violation comes before a department head, dean, or supervisor about conduct by a faculty member or other University employee not arising in the course of employment, or there is uncertainty whether it does, the accusation or complaint shall be referred to the Judicial Administrator for channeling into the administrative process or the judicial system.

c. The criterion on which the Judicial Administrator shall channel between the administrative process and the judicial system is whether the conduct is employment-related. In reaching such a decision, the Judicial Administrator shall consult with the Dean of the Faculty if the case involves a faculty member or the Vice President for Human Resources if the case involves a nonfaculty employee. The Judicial Administrator shall make his or her own decision after such consultation.

d. Upon imposition of a penalty of suspension or dismissal upon a faculty member by the University Hearing Board, the faculty member may choose to appeal to an arbitration committee (as described in Cornell University Policy 6.2.10) in lieu of appeal to the University Review Board. Any penalty imposed on a nonfaculty employee is subject to review either pursuant to the applicable grievance process (such as that described in Cornell University Policy 6.11.4) or by appeal to the University Review Board, as the employee may choose.

## Article II.    Judicial Offices

### A. Office of the Judicial Administrator

1. The Office of the Judicial Administrator receives, investigates, and pursues accusations of violations of the Campus Code of Conduct, or of any other regulation as the University Assembly or Board of Trustees may direct. Anyone can direct such accusations, or any questions about the judicial system, to that office.

2. No employee of the Office of the Judicial Administrator shall be a member of the University, Student, Graduate and Professional, or Employee Assembly, or any of their committees or boards, or of a judicial board. The Judicial Administrator may hire students who have had some legal training to act for the Judicial Administrator.

3. The Judicial Administrator shall be appointed by the President with the concurrence of the University Assembly. Upon the University Assembly chair's receipt of notice of the Judicial Administrator's resignation or removal, the chair shall convene a search committee, composed of no more than four members appointed by the University Assembly and no more than two members appointed by the President, to propose two or more nominees to the President. A chair for the search committee shall be jointly selected by the President and University Assembly Executive Committee from one of the appointed members. The President shall appoint a candidate with the concurrence of the University Assembly. The President may ask the search committee to present additional candidates if he or she does not feel that any of the nominees presented merit hire. In the event of an unexpected vacancy, the President shall, with the concurrence of the University Assembly, appoint the Associate Judicial Administrator or other qualified person to serve in an interim capacity until a permanent Judicial Administrator is appointed.

4. The Judicial Administrator shall undergo an annual review, overseen by the Chair of the University Assembly (or designee) and a designee of the President with full participation by the following representatives of the University Assembly and the administration: the Judicial Codes Councilor or their designee, the Chair of the University Assembly's Codes and Judicial Committee or their designee, two additional members of the University Assembly, and one appointee from the Division of Human Resources. The review shall include both public and private components.

    a. The public component shall afford a general opportunity for the University Community to provide feedback on the performance of the Judicial Administrator. It shall include opportunities for individuals and groups to privately share experiences in specific areas, if any, needing improvement, specific concerns, or instances of dissatisfaction as well as positive experiences and areas of praise. The evaluation process shall also include the opportunity for a reasonable number of those with interactions with the Campus Judicial System such as, but not limited to: chairs and members of the judicial boards, complainants and respondents, other members of the Office of the Judicial Administrator, and Office of the Judicial Codes Councilor to provide feedback in addition to general members of the public. This feedback shall be conveyed privately to the Chair of the University Assembly (or designee) and the President's designee who shall communicate it as needed to relevant parties such as the Judicial Administrator.

    b. Performance feedback shall be given to the Judicial Administrator by the Chair of the University Assembly and the President's designee, consistent with the University's regular system of annual evaluation.

5. The Judicial Administrator shall be solely responsible for the Office of the Judicial Administrator. The Judicial Administrator shall be independent, although an administrative relationship should exist with the University administration that will support that office. He or she shall be subject to removal only by action of the University Assembly or the President

with the concurrence of the other.

a. The University Assembly may take steps to remove the Judicial Administrator by a majority vote of its seated membership taken at a regularly scheduled meeting. Should the President agree with the action of the University Assembly, the termination of the Judicial Administrator will be implemented. Should the President not agree, and no mutually agreeable resolution is found, the University Assembly may recommend the removal of the Judicial Administrator to the Board of Trustees. The Board of Trustees' decisions and actions in response to the University Assembly's recommendation are final.

b. The President may take steps to remove the Judicial Administrator by notifying the Chair of the University Assembly. Should the University Assembly agree with the action of the President via a majority vote of its seated membership taken at a regularly scheduled meeting, the termination of the Judicial Administrator will be implemented. Should the University Assembly not agree after taking a formal vote at a regularly scheduled meeting, and no mutually agreeable resolution is found, the President may recommend the removal of the Judicial Administrator to the Board of Trustees. The Board of Trustees' decisions and actions in response to the President's recommendation are final.

6. The Judicial Administrator shall annually report to the President, the University Assembly, and its Codes and Judicial Committee on the operation of the office and the judicial system as a whole.

## B. Office of the Judicial Codes Counselor

1. The Office of the Judicial Codes Counselor provides free assistance and representation within the judicial system to those charged with violations of the Campus Code of Conduct and to students charged with violations of the Code of Academic Integrity.

2. To the extent permitted by law, the Judicial Codes Counselor shall not reveal any information provided by the accused, unless the accused expressly requests that the information in question be confided to another person. Although the Judicial Codes Counselor traditionally has had some legal training and is frequently a law school student, the services are not meant to be a substitute for professional legal advice or for the legal assistance provided by an attorney. The Judicial Codes Counselor primarily explains how the judicial system works, and assists the accused in the selection of counsel or an advisor. With the consent of the Judicial Codes Counselor, an accused may choose the Judicial Codes Counselor as the accused's advisor, in which case the Judicial Codes Counselor may participate fully on behalf of the accused in any hearing.

3. No employee of the Office of the Judicial Codes Counselor shall be a member of the University, Student, Graduate and Professional, or Employee Assembly, or any of their committees or boards, or of a judicial board.

4. The Judicial Codes Counselor shall be appointed for a two-year term. A Judicial Codes Counselor can be reappointed for additional terms. The President shall appoint the Judicial Codes Counselor with the concurrence of the University Assembly, following the procedures

for the appointment of the Judicial Administrator.

5. The Judicial Codes Counselor shall be solely responsible for the Office of the Judicial Codes Counselor. The Judicial Codes Counselor shall be independent, although an administrative relationship should exist with the University administration that will support that office. He or she shall be subject to removal during the term of office only by action of the Board of Trustees upon recommendation of the University Assembly.

## Article III.    Judicial Participants

### A. Complainant and Victim

1. Any student, member of the University faculty, or other employee of the University can allege a violation of this Code, of which he or she was the victim, by filing a complaint with the Judicial Administrator.

2. In cases in which such formal complaint is made by one or more individuals, such individuals shall be designated as the complainants. In cases in which no such formal complaint has been made or pursued, and an investigation is initiated by the Judicial Administrator, the University community shall be designated as the complainant. However, in cases concerning violations against the interests of the University, "Cornell University" (the corporation) may be named as complainant.

3. The complainant and the victim, whether or not he or she is a member of the University community, each shall have the right to be present at any relevant hearing. Each shall have the right to be accompanied at every stage by a personal advisor of that person's choice, but that advisor shall not be a witness and shall not participate in a hearing in the capacity of counsel. The Judicial Administrator shall provide to the complainant and the victim information about the University's Victim Advocate and other relevant resources, including information about how to file a police complaint.

### B. Defense Counsel or Advisor

1. When an accused appears before the Judicial Administrator, the University Hearing Board, the University Review Board, or other University officials acting in a judicial capacity, the accused has the right to be advised and accompanied at every stage by an individual of the accused's choice. Such counsel or advisor for the accused may be any member of the University community or general public, but shall not be a witness and, except for the Judicial Codes Counselor, shall not normally participate in a hearing in the capacity of counsel. However, for suspension or dismissal to be imposed, such counsel or advisor must have had a reasonable opportunity to participate fully in the hearings.

2. The accused shall have the right to act as his or her own counsel.

3. The accused person shall also have the right to be accompanied at every stage by a

personal supporter of that person's choice, but that supporter shall not be a witness and shall not participate in a hearing in the capacity of counsel.

## Article IV.    Judicial Boards

### A. University Hearing Board

A five-person panel of the University Hearing Board shall adjudicate cases under the Campus Code of Conduct. The President shall name at least one person, who is a member of the faculty recommended by the Dean of the Faculty and not a member of the University administration, to be a Hearing Board Chair presiding over five-person Hearing Panels' proceedings but having no vote; that chair shall be appointed for a two-year term, but can be reappointed for additional terms.

### B. University Review Board

A three-person panel of the University Review Board shall hear appeals under the Campus Code of Conduct. The President shall name one person, who is a member of the faculty recommended by the Dean of the Faculty and not a member of the University administration, to be the Review Board Chair presiding over three-person Review Panel's proceedings but having no vote; that chair shall be appointed for a two-year term, but can be reappointed for additional terms.

### C. Pool of Board Members

1. The University Hearing Board and University Review Board pool shall comprise 55 members confirmed by the University Assembly: 25 students, 15 faculty members, and 15 nonfaculty employees. Faculty members are nominated by the Dean of the Faculty. For other candidates, the Office of the Assemblies will solicit written applications, and the Codes and Judicial Committee shall nominate candidates to the University Assembly for its confirmation no later than the last regular meeting of the outgoing University Assembly. The University Assembly Executive Committee may make emergency appointments on a temporary basis.

2. No person shall serve on the University Hearing Board and University Review Board pool who is at the same time a member of the University Assembly or its Codes and Judicial Committee or is an employee of the Office of the Assemblies.

3. Members of the University Hearing Board and University Review Board pool shall serve terms of office as follows:
   a. All members shall be appointed for two-year staggered terms.

   b. Terms of office shall begin June 1 of the year appointed. Any appointment to fill a vacancy or to address an emergency shall become effective immediately.

   c. The Chair of the Hearing Board or Review Board shall have the authority to remove a member of the pool if the member is not honoring his/her commitment to the university to

communicate promptly with the Chair or the Judicial Administrator's office, to participate in hearings, to arrive punctually, and otherwise to participate responsibly in this process.

4. All the members of the University Hearing Board and University Review Board pool shall annually elect one Administrative Chair from among those members.

5. Although the judicial boards decide cases and appeals when sitting in panels, the pool as a group, convened by the Administrative Chair, shall perform the following functions:

a. The judicial boards shall be responsible for establishing their own internal rules and procedures not specified elsewhere, and making them available through the Offices of the Judicial Administrator and the Judicial Codes Counselor.

(1) Such rules and procedures must be published in the Cornell Chronicle before going into effect.

(2) Any changes in rules and procedures must be published in the Cornell Chronicle at least 30 calendar days before taking effect.

b. Upon request, the judicial boards shall report on their operations to the Codes and Judicial Committee of the University Assembly.

6. Training of the members of the University Hearing Board and University Review Board pool will include special training in handling complaints of sexual harassment, abuse, assault, or rape.


# TITLE THREE: REGULATIONS FOR MAINTENANCE OF EDUCATIONAL ENVIRONMENT

**Article I.      Applicability**

This Title shall apply to all students, members of the University faculty, other employees of the University, and University-registered organizations, except that those of the Medical College and the Graduate School of Medical Sciences shall be governed by separate regulations with respect to property and facilities of the Medical College and the Graduate School of Medical Sciences.

This Title shall apply to conduct on any campus of the University, on any other property or facility used by it for educational purposes, or on the property of a University-related residential organization in the Ithaca or Geneva area.

This Title shall also apply to conduct elsewhere if the Judicial Administrator—with the approval of the President or his or her designated representative in the person of the Dean of Students for conduct by students, the Provost for conduct by faculty, or the Vice President for Human Resources for conduct by other employees—considers the conduct to constitute a serious

violation of this Title, in that the conduct poses a substantial threat to the University's educational mission or property or to the health or safety of University community members.

## Article II.    Violations

## A. Listing

1. It shall be a violation of this Title, as an offense against another person or the university:

a. To (1) rape, (2) sexually assault, or (3) sexually abuse another person, as those terms are defined in Cornell University Policy 6.3[1].

b. To intentionally (1) expose a private or intimate part of one's body in a lewd manner or (2) commit any other lewd act in a public place.

c. To harass another person in a manner that would violate Cornell University Policy 6.4 if it were applicable[2].

d. To harass another person (1) by following that person or (2) by acting toward that person in a manner that is by objective measure threatening, abusive, or severely annoying and that is beyond the scope of free speech.

e. To assault or cause any physical injury to another person on the basis of disability, ethnicity, gender, national origin, race, religion, or sexual orientation or affectional preference.

f. To haze another person, regardless of the person's consent to participate. Hazing means an act that, as an explicit or implicit condition for initiation to, admission into, affiliation with, or continued membership in a group or organization, (1) could be seen by a reasonable person as endangering the physical health of an individual or as causing mental distress to an individual through, for example, humiliating, intimidating, or demeaning treatment, (2) destroys or removes public or private property, (3) involves the consumption of alcohol or drugs, or the consumption of other substances to excess, or (4) violates any University policy.

g. To (1) endanger another person, including but not limited to such acts as: introducing a weapon into a fight, whether or not the weapon was used; using one's body parts as a weapon; violation of Life Safety regulations; theft or use of fire extinguishers; use of firecrackers or flares; or any other acts, whether reckless or intentional, that create a dangerous situation for the safety of another individual (2) threaten or use physical force or violence to endanger, injure, abuse, intimidate, or coerce another person.

h. To endanger or to cause damage to or loss of property of another person.

---

[1] This Code section is subject to the provisions in Appendix A, Article I.
[2] This Code section is subject to the provisions in Appendix A, Article I in cases of sexual harassment.

i. To steal or knowingly possess stolen property, including by such acts as misappropriation of data or of copyrighted material or software.

j. To recklessly or maliciously damage, access, or interfere with, in a manner violating University technology regulations, computer or network resources, data, files, or other information.

k. To intentionally invade privacy or misappropriate property rights, by means of videotaping, photographing, audiotaping, or otherwise making any picture or sound recording.

l. To prevent a person from leaving a location (including part of the location, such as one part of a room) or to force a person to go to a location against his or her will. This is a violation whether accomplished through physical or psychological means.

2. It shall be a violation of this Title, as an offense against the University:

a. To endanger or to cause damage to or loss of property of the University.

b. To misappropriate University funds.

c. To bribe a University official.

d. To (1) forge, fraudulently alter, willfully falsify, or otherwise misuse University or non-University documents (including computerized or noncomputerized records, parking permits, dining cards, identification cards, other permits or cards, reserve books, or other property), or (2) possess such forged, altered, or falsified documents, or (3) unlawfully possess the identification of another person if that identification has a date of birth that would make the person legal to consume alcohol at a time the accused is not of a legal drinking age.

e. To furnish false information to the University with intent to deceive.

f. To claim falsely to represent the University or a University-registered organization.

g. To enter upon or make use of University or private property or facilities without authorization.

h. To fail to leave a University building after a fire alarm has sounded or other notice of fire has been given, whether or not a drill.

i. To commit a violation of Article II of Title Four.

3. It shall also be a violation of this Title:

a. To engage in disorderly conduct. Disorderly conduct means intentionally causing, or recklessly creating a risk of, disruption to the University community or local community, including by such acts as (1) violent, tumultuous, or threatening behavior, (2) unreasonably loud or belligerent behavior, or (3) obstruction of vehicular or pedestrian traffic.

b. To unlawfully manufacture, distribute, dispense, possess, use, or sell alcohol. This includes, for example, providing alcohol to an individual who is under the age of 21, selling alcohol without a license, consuming alcohol while under the age of 21 or possessing alcohol with the intent to consume it while under the age of 21.

c. To traffic, for profit or otherwise, in goods or services in a manner incompatible with the interests of the University community or local community.

d. To unlawfully manufacture, distribute, dispense, possess, use, or sell marijuana or any controlled substances as defined by state or federal law.

e. To defraud, including by such acts as failure to redeem a bad check.

f. To publicly urinate or defecate.

g. To destroy evidence or otherwise obstruct the application of this Code.

h. To assist another person to violate this Title.

i. To incite another person toward a likely and imminent violation of this Title.

j. To attempt to violate this Title.

k. To refuse to participate, without a substantial reason, as a witness in the campus judicial system, as outlined in Title Three, Article III.E.3.b(6)(c).

l. To enter any waters of Fall Creek, Cascadilla Creek, or Beebe Lake that are on or traverse the campus (within the City of Ithaca) for the purpose of swimming or bathing, except in those waters officially designated as swimming or bathing waters.


## B. Interpretation

Because the judicial system utilizes the decisions of the University Hearing and Review Boards to define or interpret violations, public records of all decisions of those boards shall be kept on file in the Office of the Judicial Administrator, including a brief summary that describes the nature of the case and its disposition but with names of individuals and other identifying information redacted.

**Article III.    Procedures**

**A. Initial Investigation**

1. The Judicial Administrator shall promptly cause an investigation to be made:

  a. upon receiving a complaint alleging a violation of this Code by a student or University-registered organization or a non-employment-related violation by a faculty member or other University employee;

  b. upon determining that a complaint referred to him or her by a department head, dean, or supervisor, or by means of a jurisdictional appeal, is non-employment-related; or

  c. upon receiving information that a violation of this Code may have occurred when no formal complaint has been made or pursued.

2. During the course of an investigation, the Judicial Administrator, before filing formal charges, may interview the persons involved. Prior to any such interview the Judicial Administrator shall, in writing, inform the person of:

  a.   the matter to be discussed and the person's alleged relationship to it; and

  b.   the services of and contact information for the Office of the Judicial Codes Counselor.

**B. Interim Measures**

1. The Judicial Administrator shall work with Campus Life, in cases in which the victim and the accused live in the same residence hall and there is a substantial danger of future harm or misconduct, to determine whether Campus Life should relocate the victim or the accused to another residence hall.

2. No-Contact Directive

  a. In cases involving allegations of harassment, abuse, assault, rape, or other menacing activity, the Judicial Administrator, after making a reasonable effort to meet with the accused if appropriate to do so, may issue a No-Contact Directive.

  b. The Judicial Administrator shall make available to the accused the exact terms of the No-Contact Directive, as soon as it is issued.

  c. In the event the Judicial Administrator is notified of a violation of the terms of the No-Contact Directive, the accused shall be provided with an opportunity to review the matter with the Judicial Administrator within two business days. If the Judicial Administrator determines, based upon the information available, that the No-Contact Directive has been violated, he or she may suspend the accused temporarily, pending resolution of the underlying case.

d. In the case of such suspension, the accused may petition the University Hearing Board in writing for a review of the decision. That board shall meet to consider the petition as soon as possible, but no later than five business days after it receives the petition. However, that board may grant a postponement upon the request of the accused, to a date not later than 21 calendar days after the petition is received. If that board determines that the No-Contact Directive was not violated or the suspension was improper or is no longer necessary, it shall lift the suspension immediately.

e. The Judicial Administrator may, in his or her discretion, rescind a No-Contact Directive or lift such a suspension if he or she determines that the circumstances no longer require such action.

## 3. Temporary Suspension Pending Resolution

a. Suspension of an Individual
(1) In extraordinary circumstances and for the purpose of ensuring public order and safety, the President or a designated representative shall have discretionary power to suspend the accused pending resolution of the underlying case. Suspension in the case of a student may include the withdrawal of any or all University privileges and services, including class attendance, participation in examinations, and utilization of University premises and facilities, as determined by the President or his or her designee.

(2) The Judicial Administrator may accept from the President this power to suspend temporarily, but only if the Judicial Administrator can exercise the power at his or her own discretion.

b. Suspension of a University-Registered Organization

(1) In extraordinary circumstances and for the purpose of ensuring public order and safety, the President or a designated representative, after consulting with the Office of the Dean of Students and/or other offices as deemed appropriate, shall have discretionary power to suspend the activities of a University-registered organization pending resolution of the underlying case.

(2) The Judicial Administrator may accept from the President this power to suspend temporarily, but only if the Judicial Administrator can exercise the power at his or her own discretion after consulting with the Office of the Dean of Students and/or other offices as deemed appropriate.

c. When the President or his or her designee exercises this power to suspend temporarily, these procedures shall be followed:

(1) In the case of such suspension, the accused may petition the University Hearing Board in writing for a review of the suspension. That board shall meet to consider the petition as soon as possible, but no later than five business days after it receives the petition. However, that board may grant a postponement upon the request of the accused, to a date not later than 21 calendar days after the petition is received.

(2) If the University Hearing Board determines that (1) good cause has not been shown for the exercise of the President's suspension power or (2) that circumstances have changed so that suspension is no longer necessary, the suspension shall be lifted immediately.

(3) If the suspension remains in effect after the University Hearing Board's initial meeting, that board may decide to reconvene, upon motion by any member or the chair of the panel or upon the request of the suspended person or University-registered organization, to determine whether circumstances no longer require suspension.

## C. Summary Decision or No Action

1. The Judicial Administrator shall determine, without undue delay, whether to offer a summary decision, to file formal charges, or to take no action.

2. The Judicial Administrator and the accused may agree, in writing, to a summary decision at any time, but typically prior to a matter going to a hearing before the University Hearing Board. If a Summary Decision Agreement is reached, the Judicial Administrator shall:

   a. send a notice of formal accusation and of the provisions of the summary decision to the accused; and

   b. notify the Judicial Codes Counselor of each summary decision as soon as possible, if the Judicial Administrator has learned that the accused has consulted the Judicial Codes Counselor.

3. In the event that this summary procedure is employed:

   a. All penalties and remedies listed in Article IV may be assessed via summary decision. In the case of suspension or dismissal, however, the Judicial Administrator must obtain the approval of a Hearing Board Chair, to insure against the possibility of intimidation or coercion in the negotiations; the Judicial Administrator must do so prior to reaching agreement, but may address the Hearing Board Chair without the participation of the accused.

   b. The accused may withdraw approval of the summary decision by written request to the Judicial Administrator within the two business days following receipt of the notice described in item 2(a) of this section.

4. In the event the Judicial Administrator determines to take no action, the Judicial Administrator shall notify the accused of such decision.

5. Except as noted below, the Judicial Administrator shall notify the complainant no more than five business days after the deadline for the accused to revoke the summary decision or after the Judicial Administrator otherwise decides not to file charges. If the Judicial

Administrator notified the complainant at a time the summary decision may still be revoked by the accused, this information must be provided to the complainant. For University complainants, the Judicial Administrator need notify the complainant only:

  i. in a case where the University complainant submitted a written request for notification at the time the complaint is lodged; and

 ii. in specific cases, limited to cases involving any violence or threatened violence against another person, violations of the Financial Irregularities Policy, and fraud or theft against the University in an amount exceeding $100.

6. If the complainant is dissatisfied with the summary decision or with the decision of the Judicial Administrator not to file charges, he, she, or it may petition the Judicial Administrator in writing to show cause for the decision before the University Hearing Board. This petition must be received by the Judicial Administrator within eight business days after the complainant's receipt of the Judicial Administrator's notice of the nonaction or within three business days after the deadline for the accused to revoke the summary action. The Judicial Administrator shall promptly forward the petition to a Hearing Board Chair. The University Hearing Board shall meet to consider the petition within 21 calendar days of receipt of the petition by the Judicial Administrator. That board can:

  a. uphold the decision of the Judicial Administrator in whole or in part;

  b. order the Judicial Administrator to reopen the investigation; or

  c. order the Judicial Administrator to file charges so that the case can be adjudicated by the University Hearing Board.

## D. Formal Charges

1. Notification of Charges

a. If, as a result of an investigation, the Judicial Administrator determines that there is reasonable cause to believe that a violation has been committed, and a Summary Decision Agreement has not been reached, then the Judicial Administrator shall promptly refer the case to the University Hearing Board by filing charges with a Hearing Board Chair.

(1) The Judicial Administrator shall make a good faith effort to serve notice of the charges on the accused (or on an officer of record of an accused University-registered organization) within seven calendar days of the filing of charges:

(a) by personal service; or, if personal service is impossible to effect after diligent effort,

(b) by certified mail, return receipt requested, to the accused's last known local or permanent address; or, if such mailed notice is impossible to effect,

(c) by a means reasonably calculated to result in actual notice.

(2) Notice of the charges shall contain:

(a) the charges in the form of a formal accusation;

(b) instructions to contact the Judicial Administrator within four business days of the accused's receipt of notice, so that a time for appearance of the accused before the Judicial Administrator may be agreed upon;

(c) notice of the nature of the evidence to be used against the accused; and

(d) a brief summary of the services of and contact information for the Office of the Judicial Codes Counselor.

b. The Judicial Administrator shall provide a copy of charges made against the accused on request of University officials, the Judicial Codes Counselor, or any other officer or board of the judicial system.

2. If the accused does appear, the Judicial Administrator shall again advise the accused of access to the Office of the Judicial Codes Counselor, and shall refer the accused to this Code and available supplementary information so that the accused can learn of:

a. the procedures of the Office of the Judicial Administrator and the judicial boards;

b. the accused's right to be accompanied by counsel or an advisor of the accused's choice;

c. the alternative administrative process provided for employment-related cases; and

d. other rights and options that may be available to the accused.

3. If the accused fails to respond within the four-day period or to agree to appear within a reasonable time, the Judicial Administrator may, in his or her discretion, forward the case to the University Hearing Board. In the alternative, deeming the accused to have waived the right to a hearing, the Judicial Administrator may proceed to find the accused to have violated this Code and directly impose a penalty in the form of oral warning, educational steps, community work, or fine as listed in Article IV. Unless the Judicial Administrator, in his or her discretion, decides to set aside such default for good cause shown, such direct penalty will stand as the equivalent of a decision of the University Hearing Board, subject only to appeal to the University Review Board.

4. Limitations Period

Any charge of a violation of this Code must be initiated by the filing of charges by the Judicial Administrator within one calendar year of the date of the alleged violation. Exceptions to this policy that extend the period beyond one year are:

a. In cases where the charge involves fraud, the period shall be one calendar year from

the alleged fraud or 60 calendar days from the filing of a complaint alleging fraud, whichever is longer, but in any event no more than three calendar years from the alleged fraud.

b. In cases where the individual to be charged is absent from the University because of either (1) a leave of absence, (2) a termination of employment, or (3) a withdrawal as a student, a charge may be brought within one calendar year of the alleged violation or within 60 calendar days of his or her return to the jurisdiction of the University judicial system, whichever is later.

c. In cases where the individual to be charged is facing public prosecution involving the same matters, a charge may be brought within 60 calendar days of the final disposition of such prosecution. Should it appear that the individual will leave the University before such time, the President or his or her designee may cause the individual's degree to be withheld for the period in which the Judicial Administrator may file charges.

d. The Judicial Administrator may request a Hearing Board Chair to extend any limitations period by up to an additional six calendar months, without required notice to any other person but upon a showing of special circumstances justifying such an extension, provided that the Judicial Administrator delivers such written request to a Hearing Board Chair prior to the expiration of that period.

## E. Hearing Procedures

1. Circumstances Requiring Hearing

a. The complainant may petition in writing for a review of the nonaction or summary action by the Judicial Administrator on the complaint.

b. The accused may petition in writing for a review of his, her, or its temporary suspension imposed by the Judicial Administrator or by the President or his or her designee.

c. The offender may petition in writing for readmission from indefinite suspension.

d. The Judicial Administrator may request a hearing by filing charges.

e. The offender may petition in writing for a review of the penalty imposed by the Judicial Administrator for noncompliance with a prescribed penalty or remedy, or for violation of probation.

2. Preparations for Hearing

a. The University Hearing Board shall hold a hearing within 21 calendar days of receipt of charges or petition by the Hearing Board Chair, unless otherwise provided by the Code, postponed by agreement of the parties, or postponed by the Hearing Board Chair for good cause shown.

b. In any case referred to the University Hearing Board for a hearing:

(1) The Judicial Administrator shall make a good faith effort to give notice of the hearing no later than seven business days in advance of the hearing, unless the accused agrees to a shorter time:

(a) to the accused in the manner for notification of charges;

(b) to the complainant by regular United States mail or by e-mail; and

(c) to the Judicial Codes Counselor by campus mail, e-mail, or telephone, if the Judicial Administrator has learned that the accused has consulted the Judicial Codes Counselor.

(2) This notice shall contain:

(a) the time and place of the hearing;

(b) specification of the charges against the accused; and

(c) statement of the accused's rights to be accompanied by counsel or an advisor of the accused's choice, to hear the evidence against the accused, to question witnesses, and to give evidence in the accused's own behalf.

c. Names and written statements of any witnesses to be called at the hearing by the Judicial Administrator or by the accused, if known at the time, shall be exchanged no later than three business days prior to the hearing. The University Hearing Board, in its discretion, may exclude a witness's testimony if it determines that the Judicial Administrator or the accused has failed to comply with this provision as to that witness.

d. Copies of exhibits to be used at the hearing by the Judicial Administrator or by the accused, if known at the time, shall be exchanged no later than three business days prior to the hearing. Any objections to exhibits shall be made to the Chair for his/her ruling in advance of the hearing. Copies of the exhibits shall be made available to board members prior to the commencement of the hearing. The University Hearing Board, in its discretion, may exclude an exhibit if it determines that the Judicial Administrator or the accused has failed to comply with this provision.

3. University Hearing Board

a. Composition

(1) In cases involving complaints against students or University-registered organizations, a Hearing Panel shall be composed of three students, one faculty member, and one nonfaculty employee, all drawn from the University Hearing Board and University Review Board pool, except that in cases of sexual harassment, abuse, assault,

or rape the complainant, victim or the accused may opt for a Hearing Panel composed of three faculty members and two nonfaculty employees drawn from that pool.

(2) In cases involving complaints against faculty members, a Hearing Panel shall be composed of three faculty members, one student, and one nonfaculty employee, all from that pool.

(3) In cases involving complaints against nonfaculty employees, a Hearing Panel shall be composed of three nonfaculty employees, one student, and one faculty member, all from that pool.

(4) Selection of a Hearing Panel, whenever one is needed, shall be made randomly by the Administrative Chair of that pool.

(5) A member of the Hearing Panel may voluntarily withdraw from participation in any case by reason of a conflict of interest or any other good cause. Knowledge of the events at issue shall not disqualify a member, unless he or she has first-hand knowledge of the events at issue, has been directly involved in those events, or is personally interested with regard to the outcome, in which circumstance the member shall be excused by vote of the Hearing Panel. Any person aware of such circumstance concerning a member shall call it to the attention of the Hearing Board Chair. In the event that a member withdraws or is excused, an alternate member shall be randomly selected by the Administrative Chair.

b. Panel Procedures

(1) The Hearing Board Chair shall have the right to convene the Hearing Panel. The Hearing Board Chair shall conduct the proceedings and maintain order in the hearing room.

(a) He or she shall make procedural rulings before or at the hearing, applying these procedures and the procedures developed by the University Hearing Board, so as to assure fairness and to avoid undue delay.

(b) However, all procedural rulings of the Hearing Board Chair, other than a decision to postpone the initial convening of a hearing, shall be subject to the approval and concurrence of the Hearing Panel as a whole. The Hearing Panel may overrule the procedural rulings of the Hearing Board Chair by ordinary majority vote.

(2) At least four members of a five-person Hearing Panel must sit for a given case, in addition to the nonvoting Hearing Board Chair, and at least three votes shall be required for any decision.

(3) Cases that present common questions of law or fact and that would come before a panel of like composition may be joined for hearing.

(a) For joint hearing, the Judicial Administrator must affirm in writing that each accused performed acts sufficiently similar that the facts presented in evidence would not differ materially from one accused to another. In such case, the Hearing Board Chair may order joinder of such cases for hearing.

(b) Any accused, whose case is joined, may request in writing to be excluded from the joint hearing on the ground that (i) the accused is not charged with the same offense, at the same time and place, or (ii) that the facts relevant to the accused would differ materially from the facts relevant to the others. Such case, with the consent of the Judicial Administrator or at the direction of the Hearing Board Chair, may be severed from the joint hearing.

(c) The Hearing Panel may permit any accused tried jointly and found to have violated this Code to submit either a written or oral statement regarding mitigating circumstances, and must permit such a statement before imposing a penalty of dismissal or of suspension for the balance of a term or longer. The Hearing Panel shall consider differences among the conduct and circumstances of each accused before imposing any penalty.

(4) At the hearing, the case shall be presented by the Judicial Administrator in the name of the complainant. But failure of an individual complainant to appear at the hearing, unless excused by the Hearing Panel for good cause shown, shall result in a loss of his or her right to the assessment in his or her favor of a remedy (which means restitution to the complainant or order to the offender, as opposed to a penalty) by the Hearing Panel.

(5) The failure of the accused to appear at the time and place designated for the accused's appearance before the Hearing Panel empowers the Hearing Panel to:

(a) impose a temporary suspension, pending the accused's appearance;

(b) find the accused to have violated this Code and impose appropriate penalties and/or remedies, but the Hearing Panel may do so only if the Judicial Administrator shows that the accused received notice of the hearing, or that the procedures for notifying the accused were followed, and submits information sufficient to establish the allegations in the charges; or

(c) excuse the failure to appear for good cause shown, in which case the accused shall have the option of having the case heard in absentia, with the privilege of submitting written evidence, or of having a new date set for a hearing.

(6) The Hearing Panel shall endeavor to evaluate all relevant facts of a given case at the hearing. It shall receive relevant information that is reasonably reliable, but need not accept as evidence accounts of the accused's statements by the Judicial Administrator. Strict rules of evidence shall not apply, and the Hearing Panel shall have the power to establish its own rules of evidence, subject to the following exceptions:

(a) Confidential relationships currently protected under state or federal law shall be protected.

(b) Evidence of a victim's sexual conduct shall not be admissible unless fairness to the accused requires consideration of such evidence, consistent with practice under section 60.42 of the New York Penal Law.

(c) Members of the Hearing Panel may question witnesses and adduce evidence, but this shall not preclude parties to the hearing from questioning witnesses or introducing evidence. No accused person shall be denied the opportunity to question witnesses or to confront his or her accusers. However, the Hearing Board Chair shall control the hearing. For example, to avoid the risk of intimidation, the Hearing Board Chair may require certain questioning to be conducted by written questions read aloud to the witness by the Hearing Board Chair. In particular, to avoid the risk of intimidation in cases of sexual harassment, abuse, assault, or rape, the Hearing Board Chair shall require cross-examination of the complainant or victim to be conducted by written questions submitted in advance or in real time, including follow-up questions, and read aloud to the witness by the Hearing Board Chair, if the witness so requests. If an individual complainant does not testify, the Hearing Panel may proceed to decision only if it finds that the complainant's interests in not testifying outweigh the accused's interests in confronting his or her accuser. In any case, the accused can prevent the introduction of any written, recorded, or oral account of an earlier statement by a nontestifying complainant or victim, unless the Hearing Board Chair finds compelling circumstances of need for and reliability of such statement. If a witness critical to the proof of the charges or to the defense against those charges indicates to the Judicial Administrator or the accused that he or she refuses to testify, the Judicial Administrator or accused may ask the Hearing Board Chair to order the witness to testify. The Hearing Board Chair shall, in his or her sole discretion, grant or deny the request based on the balance of equities for the witness, the complainant, the accused, the victim, and the University. If a witness does not appear for a scheduled hearing, the Hearing Board Chair may decide whether to delay the hearing pending the witness's testimony.

(d) No accused person shall be denied the right to present evidence and witnesses in his or her own behalf.

(e) No accused person shall be compelled to testify against himself or herself. The hearing can proceed even if he or she chooses to remain silent.

(7) All hearings shall be private unless (a) the accused notifies the Judicial Administrator, no later than two business days before the hearing, that he or she wishes a public hearing and (b) the Hearing Board Chair determines that a public hearing would not result in undue intimidation of the complainant, the victim, or the witnesses. In cases of sexual harassment, abuse, assault, or rape, all hearings shall be private, with the accused having no option of requesting a public hearing; and in such cases, if either the accused, the complainant, the victim, or the Judicial Administrator requests that the proceedings be conducted in a fashion such that the accused and the complainant or victim

be separated or such that the intimidation of the complainant or victim be otherwise reduced, the Hearing Board Chair, after determining appropriateness, shall make suitable arrangements to accomplish this. In the event of a public hearing, the Hearing Board Chair shall convene it in quarters that accommodate a reasonable number of the public, but may limit the number in the interest of preserving the decorum and dignity of the proceedings. Witnesses shall be excluded from all hearings, except for the period of their questioning. Witnesses shall not see or hear other evidence presented at the hearing, such as any police report, except as the Hearing Board Chair determines to be appropriate. All deliberations by the Hearing Panel and Hearing Board Chair shall be private.

(8) A verbatim record shall be kept of all hearings, but not of deliberations, and made available to the complainant within the allotted time for filing an appeal, and to the accused at any time.

(9) The Hearing Panel shall proceed to a decision as expeditiously as possible, and then shall notify the Judicial Administrator of its decision without delay. All decisions by the Hearing Panel shall be in writing, including a rationale and any dissenting opinions. The burden of proof on violation shall rest on the complainant, and the standard of proof on violation shall be clear and convincing evidence[3], which is a higher standard than the civil law's more-likely-than-not standard but a lower standard than the criminal law's beyond-a-reasonable-doubt standard. After hearing, the Hearing Panel can:

(a) sustain a defense of lack of jurisdiction or other inapplicability of this Code, including that off-campus conduct did not meet the requirement of being a serious violation of this Title, and dismiss the case, although any such defense shall be deemed waived if not raised by the conclusion of the hearing;

(b) find the accused did not violate this Code and dismiss the case; or

(c) find the accused violated this Code and impose a penalty and/or remedy.

(10) The Judicial Administrator shall serve written notice of the decision of the Hearing Panel on the accused and the complainant within five business days of the Judicial Administrator's receipt of the written decision. The accused shall be provided with a full copy of the decision. The complainant shall be provided a copy of the decision with names of individuals and other identifying information redacted.

## F. Appeal Procedures

1. University Review Board

a. Composition

---

[3] For some violations, a different standard of evidence is required. See Appendix A, Article I.

(1) A Review Panel shall consist of three voting members: one student, one faculty member, and one nonfaculty employee.

(2) The members of the Review Panel, for any one appeal, shall be selected in the same manner as the members of a Hearing Panel from the University Hearing Board and University Review Board pool. But no person who served on the Hearing Panel shall sit on the Review Panel in the same case.

b. Panel Procedures

(1) Right to Appeal

(a) An accused against whom a penalty has been imposed or a remedy assessed by a Hearing Panel shall have the right to appeal the decision to the Review Panel.

(b) Any complainant, other than the University community as defined in Article III.A.2 of Title Two, shall have the right to appeal a Hearing Panel decision to the

Review Panel if remedies were sought or if other laws or regulations require allowing such appeal[4].

(c) The Judicial Administrator shall have the right to appeal the penalty imposed by a Hearing Panel.

(2) Appeals may be grounded only upon the complainant's belief that the remedy awarded the complainant is not commensurate with the injury[5], upon the Judicial Administrator's belief that the penalty is not commensurate with the violation, or upon the accused's belief that:

(a) the Hearing Panel violated the fair application of the procedures established by the Board of Trustees, the University Assembly, or the University Hearing Board, and such violation may have had a prejudicial effect upon the outcome of the hearing;

(b) the Hearing Panel committed a prejudicial error in interpreting this Code or rendered a decision clearly against the evidence;

(c) new evidence was discovered after the hearing and could not have readily been discovered before the hearing, and such evidence might have had an effect upon the outcome of the hearing; or

(d) the penalty and/or remedy imposed upon the accused is unjust.

(3) Notification of Appeal

---

[4] For some violations, the complainant must have the same rights of appeal as the accused. See Appendix A, Article I.

[5] For some violations, the complainant must have the same rights of appeal as the accused. See Appendix A, Article I.

(a) The appellant shall file written notice of appeal with the Judicial Administrator within ten business days of the appellant's receipt of the notice of the decision. The Judicial Administrator shall refer the notice of appeal to the Review Board Chair without delay.

(b) The appellant and the respondent (if there is one other than the Judicial Administrator) shall be notified by the Judicial Administrator of the time of the appeal's hearing no later than seven business days after the notice of appeal is filed, and no fewer than seven business days in advance of the appeal's hearing.

(4) The Review Board Chair shall have the right to convene the Review Panel and shall conduct the appeal in a manner similar to a Hearing Panel proceeding. The Review Panel shall meet to hear an appeal within 21 calendar days after the notice of appeal is filed, unless a postponement is granted by the Review Board Chair for good cause shown.

(5) Decision of the Review Panel shall be rendered by a majority vote of the members present, and the majority of the members, in addition to the nonvoting Review Board Chair, shall constitute a quorum for any hearing of the appeal.

(6) The Review Panel shall determine whether its hearings shall be conducted in public or in private. However, all deliberations of the Review Panel and Review Board Chair shall be private.

(7) Disposition of Appeal

(a) Any decision of the Review Panel shall be based solely on the record and, in appropriate cases, upon a showing of new evidence relevant to the grounds for appeal. All decisions shall be in writing, including a rationale and dissenting opinions. Findings of fact shall not be set aside unless clearly erroneous, and harmless errors shall be ignored.

(b) The decision shall be affirmance unless the Review Panel sustains one of the above-specified grounds for appeal, in which case the Review Panel can:

(i) reverse a finding of violation;

(ii) alter a penalty or modify a remedy, if necessary and appropriate in the interests of justice;

(iii) remand a case to the Hearing Panel from which it originated for a new hearing; or

(iv) remand a case to a newly composed Hearing Panel if there were procedural violations.

(c) If the Review Panel calls for new evidence, it shall remand the case to the Hearing Panel from which it originated for a new hearing.

2. No final decision of this judicial system shall be reviewed by any other authority within the University, except that either the Judicial Administrator or the accused may appeal the penalty imposed by the Review Panel for violations involving acts or threats of violence, including sexual assault. Such appeal shall be to the President within fifteen business days of the appellant's receipt of the Review Panel's decision. The appeal shall be a written petition with the opportunity for the other party to respond; no oral argument shall be heard. The President may alter the penalty only by a written and reasoned opinion.

## G. General Procedures

1. Deadlines

a. In computing any time period specified in this Code, the day of the event, act, or default that initiates the period shall be excluded.

b. The Judicial Administrator and other parties to the hearings must make good faith efforts to meet the deadlines for conducting hearings outlined by this Code. If the deadlines cannot be met, however, the hearings must be held as soon as practicable.

2. Legal Advisor

The Hearing Panel or the Review Panel may appoint an independent legal advisor who shall advise that board on all legal matters relating to the performance of its responsibilities, and who may be present during any hearings and, upon the invitation of that board, during deliberations.

3. Witness Immunity

The Judicial Administrator, the Hearing Panel, or the Review Panel may grant to witnesses transactional immunity from proceedings within the judicial system.

4. Confidentiality

a. All who are involved in the complaint, investigation, hearing, appeal, and reporting processes are obliged to maintain confidentiality of the proceedings, except as otherwise specifically provided in this Code. They shall protect the confidentiality of all judicial records, except those records specifically referred to in Article II.B. Copies of judicial records shall not be released to outside sources without written consent of the subject of such record, except as provided in subsection (b) below.

b. The University will take reasonable measures to ensure the confidentiality of the proceedings and records; however, the University cannot and does not guarantee that confidentiality can or will always be maintained. Additionally, the University may disclose judicial records or otherwise confidential information:

i. when required by law; or,

ii. when authorized by law and necessary to protect the safety or well-being of the University community members, or to preserve the integrity of proceedings under this Code; or,

iii. with respect to the judicial records of University registered organizations only, when deemed necessary to educate the University community or to provide information to the University community about the organization's conduct.

c. Notification of the offender's violations, penalties, and remedies shall be sent as directed by the Hearing Panel or Review Panel to the University officials necessary to make the penalties and remedies effective, and to other persons who might provide counseling assistance to the offender.

5. Record Keeping

a. The Office of the Judicial Administrator shall retain records of all complaints, orders, charges, proceedings, and decisions in accordance with that office's internal records management practices and Cornell University Policy 4.7.

b. Violations, penalties, and remedies shall be recorded in the Office of the Judicial Administrator and/or Director of Cornell Police in all cases arising under this judicial system. However, only a penalty of written reprimand, probation, suspension, or dismissal creates a disciplinary record.

## Article IV.    Penalties and Related Provisions

## A. Penalties

1. The following penalties may be imposed, or imposed and deferred as specified in the summary decision or board decision, provided that no person shall endure cruel and unusual punishment. In situations where an individual is both taking classes and on the University payroll, appropriate penalties may come from either or both Subsections a and b.

a. Students

(1) Oral warning.

(2) Appropriate educational steps (such as referrals for alcohol or drug education, reflection papers, counseling, letters of apology, or directed study).

(3) Community work, which shall not be more than 80 hours per violation, and must be performed in a manner acceptable to the Judicial Administrator.

(4) Fine of not less than $20 nor more than $500 payable to the University Treasurer.

(5) Restriction or loss of specified privileges for a stated period not to exceed one year, including for example:

(a) in cases of misconduct in connection with University services or facilities, the student being prohibited from further use of those services or facilities other than in the course of his or her work or study; or

(b) in cases of misconduct in connection with University-owned or University-operated housing, the student being ordered to vacate such housing.

(6) Written reprimand.

(7) Probation for a stated period.

(8) Suspension from the University for a stated period not to exceed five years, or indefinitely with the right to petition the University Hearing Board in writing at any time for readmission after the academic term following the academic term in which the suspension occurred. Such petition shall be submitted no later than April 1 if the petition is for readmission for the fall semester and by November 1 if the petition is for readmission for the spring semester. If the Judicial Administrator agrees with the petition of the accused, he or she may permit the readmission without the petition being considered by the University Hearing Board, after consulting with appropriate professional colleagues and receiving approval of a Hearing Board Chair. If the University Hearing Board denies the petition, the accused may not petition again until the next semester and, in any event, may not petition for readmission for the same semester denied by the University Hearing Board. While on such suspension, the student may not obtain academic credit at Cornell or elsewhere toward the completion of a Cornell degree.

(9) Dismissal, i.e., expulsion from the University.

b. Faculty and Other Employees

(1) Oral warning, educational steps, community work, and fine, as provided for student offenders.

(2) Written reprimand.

(3) Suspension from University duties for a stated period not to exceed one month, with loss of salary but without loss of other rights or privileges.

(4) Dismissal from University employ, with termination of any contract or tenure.

c. University-Registered Organizations

(1) Appropriate educational steps for members of the organization (such as referrals for alcohol or drug education, reflection papers, counseling, letters of apology, or directed study).

(2) Community work performed by members in a manner acceptable to the Judicial Administrator.

(3) Fine of not less than $25 nor more than $500 payable to the University Treasurer.

(4) Restriction or loss of specified privileges for a stated period not to exceed one year.

(5) Written reprimand.

(6) Suspension of all privileges for a stated period not to exceed one year.

(7) Dismissal, i.e., recision of permission to operate on University property.

2. An offender's prior record of violations under this Code should be considered in the imposition of a penalty.

a. Ordinarily, the penalty for a second violation, whenever such violation occurs, should be more severe than for a first violation.

b. Ordinarily, the penalty for a third violation by a student within a twelve-month period should be probation or suspension from the University for a stated or indefinite period and denial of academic credit for the term in which the suspension occurs. The penalty may be reduced if a lesser penalty would more appropriately serve the interests of justice and if, in addition, the offender expressly agrees not to engage in misconduct of specified kinds in the next twelve months. In such a case of indefinite suspension, the offender may petition the University Hearing Board in writing for readmission, but no application for readmission for the academic term following the academic term in which the suspension occurred will be permitted.

3. Without intending to limit the assessor's ultimate discretion, certain types of violations are so fundamentally inconsistent with the University's educational mission that, absent unusual mitigating factors, a sanction of substantial suspension or dismissal ordinarily should be imposed. Such violations include acts of violence, including sexual violence; violations that are motivated by bias based on disability, ethnicity, gender, national origin, race, religion, sexual orientation or affectional preference, or any other suspect or invidious category; or any other violation that substantially threatens the University's educational mission or property or the health or safety of University community members.

## B. Remedies

The following remedies may be imposed:

1. Restitution to the University or to the victim of the violation.

2. Order to the offender to perform, or to cease and desist from, stated actions.

## C. Compliance

1. An official transcript issued during the pendency of charges shall indicate that charges are pending, accompanied by a complete recitation of the pending charges. The University, upon request of the person seeking the transcript, shall notify that person of the final judgment in the case. The University may withhold awarding a degree otherwise earned until the completion of proceedings, including compliance with a prescribed penalty or remedy.

2. If an offender has not complied with the prescribed penalty or remedy within the specified time, the Judicial Administrator shall notify the University Registrar, Office of the Dean of Students, and other offices on a need-to-know basis that the individual or organization is suspended, and the suspension shall have immediate effect and continue until the offender has complied. For any violation of the terms of probation committed during the probationary period, the Judicial Administrator may impose on the offender additional penalties, including suspension or dismissal. The offender may request an appearance before the Judicial Administrator in order to show the fact of compliance, to contest the violation of probation, or to argue for a lesser penalty. The offender may petition the University Hearing Board in writing for a review of the penalty imposed by the Judicial Administrator for noncompliance or for violating probation.

3. No official transcript or degree will be granted to any person who has been found in violation of this Code and who has not fulfilled any condition or requirement fixed as a penalty or remedy, but such official transcript or degree shall be granted upon fulfillment of all such outstanding obligations.

## D. Other Proceedings

1. Any Title of this Code and the penalties and remedies imposed thereunder shall not be deemed exclusive of and shall not preclude resort to any applicable state, federal, or local law or ordinance or other University regulations and procedures. They shall not be deemed to limit the right of the University or of any person to take such additional action as may seem appropriate or necessary to maintain public order and safety and to protect legal rights.

2. Imposition of any penalty or remedy under any Title shall not preclude the imposition of any other penalty or remedy under this Code.

## TITLE FOUR: REGULATIONS FOR MAINTENANCE OF PUBLIC ORDER

## Article I.    Applicability

This Title shall apply to all persons and organizations, including visitors and other licensees and invitees, on any campus of the University, on any other property or facility used by it for educational purposes, or on the property of a University-related residential organization in the

Ithaca or Geneva area, except that students, members of the University faculty, other employees of the University, and University-registered organizations of the Medical College and the Graduate School of Medical Sciences shall be governed by separate regulations with respect to property and facilities of the Medical College and the Graduate School of Medical Sciences.

## Article II.    Violations

## A. Listing

It shall be a violation of this Title:

1. To disrupt or obstruct or attempt to disrupt or obstruct any instructional, research, service, judicial, or other University operation or function or to interfere with or attempt to interfere with the lawful exercise of freedom of speech, freedom of movement, freedom of peaceable assembly, or other right of an individual, by any action including but not limited to the following:

    a. by intentionally using or threatening physical force or violence to harass, endanger, injure, abuse, intimidate, or coerce another person, or to cause damage to or loss of property;

    b. by intentionally obstructing or causing to be obstructed the lawful use of, access to, or egress from University premises or portions thereof, or by making unauthorized entry upon or use of a University property or facility or by unlawfully remaining in or on the same;

    c. by intentionally obstructing or restraining the lawful movement of another person or obstructing or restraining his or her lawful participation in an authorized activity or event, such as regular and special curricular activities, extracurricular activities, and employment interviews; or

    d. by intentionally inciting another person toward a likely and imminent violation of this Subsection 1.

2. To refuse to comply with any lawful order of a clearly identifiable University official acting in the performance of his or her duties, or with a policy that has been duly promulgated by the University or any college, department, or unit thereof, whether or not the policy has been issued in the standardized University format.

3. To possess, carry, or use firearms (including rifles or shotguns), ammunition, explosives, or other dangerous weapons, instruments, or substances in or upon University premises, except by law enforcement officers or except as specifically authorized by the University.

4. To engage in any action or situation that intentionally or recklessly endangers mental or physical health or involves the forced consumption of alcohol or drugs, for the purpose of initiation into or affiliation with any group or organization.

5. To use ethnicity, gender, national origin, political persuasion, race, religion, or sexual orientation or affectional preference as a criterion for admission or seating at public speaking events advertised as open to the University community.

6. To disrupt or obstruct or attempt to disrupt or obstruct any speaker invited to appear on the campus by the University or a University-recognized organization.

7. To build a structure on the campus without a permit or in violation of the conditions of a permit, and to refuse to dismantle it or discontinue the nonconforming feature upon the lawful direction of an authorized University official.

8. To disrupt or attempt to disrupt intentionally any recruitment activity of a recruiter who is on campus in accordance with ordinary University processes.

9. To fail to comply with any time, place, and manner regulation authorized by Article III of Title One.

## B. Interpretation

Consistent with these regulations making it an offense "to interfere with or attempt to interfere with the lawful exercise of freedom of speech, freedom of movement, freedom of peaceable assembly, or other right of an individual," this Title shall not be interpreted to permit the unlawful interference with such rights, as protected by the constitutions and laws of the United States and the State of New York. Nothing in this Title or any other University regulation, however, shall be interpreted to limit or prevent the University from seeking, without unlawfully interfering with any of the rights described, (1) to enforce the laws respecting trespass or (2) to regulate lawfully the use of University property. Nothing shall be deemed to impair the right of the University to take such action as may be necessary or appropriate for the purposes of construction and repair of facilities, of regulating vehicular and pedestrian traffic, and of maintaining public order and safety. And nothing shall be deemed to impair the right of the University to take such nondisciplinary administrative action as may be necessary or appropriate to maintain public order and safety.

## Article III.    Procedures

## A. Immediate Enforcement

The President or a designated representative shall be responsible for initiating and ensuring the prompt enforcement of this Title. For conduct that violates this Title, individuals and organizations may be ejected from the University campus, property, or facility, or any part thereof by the President or his or designee acting in the following manner:

1. When the continued presence of an individual poses a clear and present danger to the public order or to the security of any property or the safety of any person, the individual may be ejected, but only until a hearing before the University Hearing Board.

2. In the case of an organization that authorizes conduct posing such a clear and present

danger, the President or his or designee may rescind permission for that organization to operate on University property and rescind the registration of the organization, but only until a hearing before the University Hearing Board.

3. The University Hearing Board shall meet to review such action within five business days after the day on which the alleged offense occurred.

## B. Disciplinary Process

For procedures, this Title adopts the provisions of Titles Two and Three prevailing at the time of the violation, except in the following particulars:

1. The President or his or designee shall perform the functions of the Judicial Administrator. In the case of service upon the President of any notice, including a notice of

appeal, delivery to the office of the President or his or her designee shall constitute sufficient service.

2. In the event that a violation of this Title should also constitute a violation of other University regulations, including Title Three, the President or his or designee may, in his or her discretion, determine to handle the hearing and appeal of all such violations in one proceeding pursuant to the procedures of this Title.

3. Additionally, the President or his or her designee shall have the right to appeal a Hearing Panel final decision to the Review Panel on the grounds that the Hearing Panel committed a prejudicial error in interpreting this Code or rendered a decision clearly against the evidence, by filing written notice of appeal with the Review Board Chair within five business days of receipt of the notice of decision.

## Article IV.    Penalties and Related Provisions

For penalties and related provisions, this Title adopts the provisions of Article IV of Title Three prevailing at the time of the violation.

# APPENDIX A: Additional Policies Appended To the Code

**Article I.     Procedures for Violations Involving Sexual Violence and Sexual Assault**

Offenses involving sexual violence and sexual harassment, while still violations of the Campus Code of Conduct, will be investigated and adjudicated under Cornell University Policy 6.4 until such time as the Code is amended to fulfill requirements of Title IX.

To assist readers in interpreting the Campus Code of Conduct (the Code), references to this language have been made by footnotes throughout the Code; however, the text may apply to other sections of the Code even if no explicit footnote reference is provided.