**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DR. MUKUND**
**VENGALATTORE,**

                                    **Plaintiff,**                          **3:18-cv-1124**
                                                                            **(GLS/TWD)**

                            **v.**

**CORNELL UNIVERSITY et al.,**

                                    **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PLAINTIFF:**
New Civil Liberties Alliance                  CALEB KRUCKENBERG, ESQ.
1225 19th St. NW
Suite 450
Washington, DC 20036

**FOR THE DEFENDANTS:**
_Cornell University_
Ward Greenberg Heller & Reidy LLP             THOMAS S. D'ANTONIO, ESQ.
1800 Bausch & Lomb Place
Rochester, NY 14604-2713

Office of Counsel                             WENDY E. TARLOW, ESQ.
300 CCC Building, Garden Avenue
Ithaca, NY 14853

_Betsy Devos & U.S. Department_
_of Education_
HON. GRANT C. JAQUITH
United States Attorney                        WILLIAM F. LARKIN
P.O. Box 7198                                 Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261-7198

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Dr. Mukund Vengalattore brings this action against

defendants Secretary of Education Betsy Devos, in her official capacity,

and the U.S. Department of Education (collectively, hereinafter "federal

defendants"), and Cornell University.  (Am. Compl., Dkt. No. 31.)  Pending

are defendants' motions to dismiss and/or for summary judgment.  (Dkt.

Nos. 36, 41.)  For the reasons stated below, defendants' motions are

granted.

### II. Background

**A.   Facts**[1]

*1.    Cornell's Investigation*

In 2009, Vengalattore was hired by Cornell as an Assistant Professor

of Physics.  (Am. Compl. ¶ 196.)  After several years at Cornell,

Vengalattore was considered for a promotion to tenured professor, but his

tenure application was ultimately denied.  (*Id.* ¶¶ 293, 342, 628, 631.)

_____

[1] The facts are drawn from Vengalattore's amended complaint and presented in the light most favorable to him.

During his time at Cornell, Vengalattore worked on an experiment in his lab, and recruited graduate assistants to help him.  (*Id.* ¶ 199.)  "Jane Roe," a Cornell graduate student, began working under Vengalattore in the spring of 2009.  (*Id.* ¶¶ 201-02.)

Shortly after Vengalattore's tenure review began, Roe sent a letter to the tenure review committee, describing a time in the lab when "Vengalattore became so impatient with [Roe's] position that he picked up the power supply in dispute—a metal box weighing five pounds—and threw it at [her]."  (*Id.* ¶ 310.)  Roe also made accusations that Vengalattore "committed sexual misconduct," and that he "had been romantically involved with her."  (*Id.* ¶¶ 324, 332.)

In February 2015, Cornell began an investigation into Roe's allegations.  (*Id.* ¶¶ 343-574.)  The investigators failed to follow Cornell's protective procedures as set forth in its faculty handbook and the campus bylaws, and "ignor[ed] witness complaints" about Roe's "inappropriate racial comments in the lab, telling . . . Vengalattore in front of the other students, 'You are all Indians.  Of course you stick together,' and telling [him and other students in the lab] that they could be expected to work long hours because 'they are Indians, who are hardworking like Chinese.'"

(*Id.* ¶ 693.)

In September 2015, a final written report from the investigation was issued, "recommend[ing] that the Dean find that a preponderance of the credible evidence supports the conclusion that [Vengalattore] . . . had a romantic or sexual relationship with [Roe], a student he directly supervised," but "that no specific finding be made as to whether the first sexual encounter rises to the level of sexual assault as defined by Policy 6.4," which is Cornell's Title IX policy.  (*Id.* ¶¶ 575-76.)

In October 2015, Gretchen Ritter, Dean of the College of Arts and Sciences, adopted this recommendation, finding that Vengalattore violated Cornell's "Romantic and Sexual Relationships Between Students and Staff" policy.  (*Id.* ¶¶ 621-22.)  This policy is set forth in Cornell's Faculty Handbook, and was "promulgated by the Faculty Council of Representatives," effective in September 1996.  (*Id.* ¶¶ 174, 577.)  The policy "generally provide[s] that a faculty member 'should' not 'simultaneously be romantically or sexually involved with a student whom he or she teaches, advises, coaches, or supervises in any way' because a 'conflict of interest arises when an individual evaluates the work or performance of a person with whom he or she is engaged in a romantic or

sexual relationship.'" (*Id.* ¶ 175.)

In adopting the recommendation, Ritter wrote:

> I find that a preponderance of evidence supports the claim that you were involved in a sexual relationship with your former graduate student over a period of several months while also serving as her graduate advisor. As a result, I find that you have violated the university's 'Romantic and Sexual Relationships' policy by engaging in such conduct. I also find that there is not significant evidence to support the claim that the initial sexual encounter between you and the graduate student involved a sexual assault. . . . Given the finding of an inappropriate sexual relationship, I also find that in your denial of a sexual relationship you have lied to the investigators in this case.

(*Id.* ¶ 622.) Based on these findings, Vengalattore was suspended, without pay, for a two-week period, effective June 1, 2017. (*Id.* ¶¶ 623, 637-38.) About one year later, in June 2018, Vengalattore's "academic appointment . . . ended." (*Id.* ¶ 647.)

Since leaving Cornell, Vengalattore has been unable to secure lab support and continue his research projects. (*Id.* ¶¶ 648, 651.) Vengalattore alleges that "Cornell has communicated to [a number of] colleges and universities the substance of . . . Ritter's [false] finding that . . . Vengalattore was involved in a sexual relationship with his former graduate student over a period of several months while also serving as her

5

graduate advisor, and that he lied to the investigators about that relationship." (*Id.* ¶¶ 654-56.) "As a result . . . none of these colleges or universities have offered employment to . . . Vengalattore or allowed him to conduct his research at their facilities." (*Id.* ¶ 657.)

### 2. *The Challenged Guidance Documents*

The Office of Civil Rights (OCR) has published several guidance documents, including: (1) a "Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties" (hereinafter "2001 Guidance"); (2) a "Dear Colleague Letter" (hereinafter "2011 DCL"); and (3) a "Questions and Answers on Title IX and Sexual Violence" (hereinafter "2014 Q&A"). (*Id.* ¶¶ 27, 35, 49.)

Through these guidance documents, federal defendants "coerced . . . Cornell to revise its campus disciplinary policies, and its policies for adjudicating faculty complaints," and "coerced . . . Cornell to remove appropriate protections" during campus disciplinary proceedings. (*Id.* ¶¶ 703-04.) When conducting its disciplinary proceedings against Vengalattore, Cornell "act[ed] at the behest" of federal defendants, and denied him due process rights, "for fear of being subject to an enforcement action." (*Id.* ¶¶ 708-09.)

**B.    Procedural History**

Vengalattore commenced this action on September 18, 2018.

(Compl., Dkt. No. 1.)  Federal defendants then moved to dismiss, (Dkt. No.

21), and Cornell filed an answer and a motion for a judgment on the

pleadings under Fed. R. Civ. P. 12(c), (Dkt. Nos. 22, 23).  In response,

Vengalattore filed an amended complaint as of right, which is now the

operative pleading.  (Am. Compl.)

In his amended complaint, Vengalattore asserts the following claims

against Cornell: (1) a violation of Title IX[2]; (2) a violation of Title VI[3]; (3) a

violation of due process pursuant to 42 U.S.C. § 1983; and (4) defamation.

(Am. Compl. 658-733.)  He asserts the following claims against federal

defendants: (1) a violation of the Administrative Procedure Act[4] (APA), and

(2) a violation of the Spending Clause of the United States Constitution.[5]

(*Id.* ¶¶ 734-846.)  Before the court is federal defendants' motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(1) and (6), (Dkt. No. 36), and Cornell's

_____

[2] *See* 20 U.S.C. §§ 1681-88.

[3] *See* 42 U.S.C. §§ 2000d-2000d-7.

[4] *See* 5 U.S.C. § 706.

[5] U.S. Const., Art. I, § 8, cl. 1.

motion to dismiss pursuant to Fed. R. Civ. P. 12(c) and/or for summary

judgment pursuant to Fed. R. Civ. P. 56, (Dkt. No. 41).

### III.  Standards of Review

### A.   Motion to Dismiss

The standards of review under Fed. R. Civ. P. 12(b)(6) and 12(c),

which are the same, *see Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233,

234 (2d Cir. 2012), are well settled and will not be repeated here.  For a full

discussion of the governing standard, the court refers the parties to its prior

decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218

(N.D.N.Y. 2010).

Under Rule 12(b)(1), the standard of review is similar to that of Rule

12(b)(6) and 12(c), except that the court "may refer to evidence outside the

pleadings . . . [and a] plaintiff asserting subject matter jurisdiction has the

burden of proving by a preponderance of the evidence that it exists."

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citations

omitted).

### B.   Motion for Summary Judgment

The standard of review under Fed. R. Civ. P. 56 is well settled and

will not be repeated here.  For a full discussion of the governing standard,

the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F.

Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489

F. App'x 500 (2d Cir. 2012).

## IV.  Discussion

### A.   Federal Defendants' Motion

Vengalattore challenges the 2001 Guidance, the 2011 DCL, and the

2014 Q&A (collectively, hereinafter "the Guidance Documents"), seeking

declaratory and injunctive relief and alleging causes of action for violations

of the APA and the Spending Clause.  (Am. Compl. ¶¶ 734-846.)  Federal

defendants argue, among other things, that Vengalattore lacks standing to

challenge these guidance documents.  (Dkt. No. 36, Attach. 1 at 8-14.)

The court agrees.

The Supreme Court has enumerated the following elements

necessary to establish Article III standing:

> First, the plaintiff must have suffered an injury in
> fact—an invasion of a legally-protected interest which
> is (a) concrete and particularized, and (b) actual or
> imminent, not conjectural or hypothetical.  Second,
> there must be a causal connection between the injury
> and the conduct complained of—the injury has to be
> fairly traceable to the challenged action of the
> defendant, and not the result of the independent
> action of some third party not before the court.  Third,

> it must be likely, as opposed to merely speculative,
> that the injury will be redressed by a favorable
> decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal

quotation marks, alterations, and citations omitted).

Assuming the injury prong has been satisfied, Vengalattore fails to

plausibly allege causation.  The causation prong requires a plaintiff to show

that there is a "causal connection between the injury and the conduct

complained of," which requires the injury to be "fairly traceable to the

challenged action of the defendant, and not the result of the independent

action of some third party not before the court."  *Lujan*, 504 U.S. at 560

(alterations and citation omitted).

Federal defendants argue that Vengalattore fails to allege any causal

connection between his purported injuries and the Guidance Documents,

because his two-week suspension, and the ensuing reputational harm

flowing therefrom, were caused by Cornell's independent actions, "based

upon the application of their internal policies and procedures," not from the

Guidance Documents.  (Dkt. No. 36, Attach. 1 at 10-13.)

Vengalattore relies on *Department of Commerce v. New York*,

139 S.Ct. 2551 (2019) in advancing his argument that his injuries are

10

"traceable" to the Guidance Documents because, even though his injuries

"arose from the 'decisions of independent actors,'" namely Cornell, "it was

entirely predictable that Cornell would impose its unfair disciplinary process

in response." (Dkt. No. 42 at 2-4.)  However, in *Department of Commerce*,

although the plaintiffs' alleged injury required the intervening acts of third

parties not before the court, the plaintiffs demonstrated, through evidence

at trial, that "third parties will likely react in predictable ways" regarding a

citizenship question in the census.  139 S.Ct. at 2566.  Therefore, the

plaintiffs' "theory of standing . . . [did] not rest on mere speculation about

the decisions of third parties; it relie[d] instead on the predictable effect of

Government action on the decisions of third parties."  *Id.*  Here,

Vengalattore has made no such showing.  To the contrary, the injuries he

alleges—a two-week suspension, and reputational harms flowing

therefrom—arise directly, and only, from Ritter's findings that he violated

Cornell's "Romantic and Sexual Relationships" policy, which had been in

effect since September of 1996, prior to the Guidance Documents.  (Am.

Compl. ¶¶ 577, 622-23, 638.)

And, there are no allegations that Ritter based her finding on the

Guidance Documents.  *See Parsons v. U.S. Dep't of Justice*, 801 F.3d 701,

713-14 (6th Cir. 2015) (holding that the plaintiff's connected their injury to the challenged action of the Department of Justice's (DOJ's) designation of fans of the Insane Clown Posse musical group as a gang, because the plaintiffs alleged that local law enforcement officials acted "based on" the DOJ's gang designation).  Lastly, as to his alleged reputational injuries, Vengalattore asserts that Cornell, not the Department of Education, "re-published" this statement to third parties such as other universities and colleges, causing him "loss of career opportunities" and "reputational damages."  (*Id.* ¶¶ 724, 732.)

Accordingly, because the amended complaint fails to plausibly allege any causal connection between the Guidance Documents and Vengalattore's injuries, he has no standing to challenge federal defendants' actions.  This is further emphasized by his failure to satisfy the redressability prong.

The redressability prong requires a showing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (internal quotation marks and citation omitted).  When a plaintiff's alleged injury "arises from the government's allegedly unlawful regulation . . . of *someone else*, much

12

more is needed." *Id.* at 562.  Thus, although "standing is not precluded . . . when the plaintiff is not himself the object of the government action or inaction he challenges," *id.*, "[r]edressability is typically more difficult to establish where the prospective benefit to the plaintiff depends on the actions of independent actors," *Parsons*, 801 F.3d at 715-16 (citing *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989)).  A plaintiff has not shown a redressable injury when "it is purely speculative that a requested change in government policy will alter the behavior of regulated third parties that are the direct cause of the plaintiff's injuries."  *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004), *abrogated on other grounds by Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017).

Federal defendants argue that Vengalattore fails to show how a favorable decision would redress his injuries, because his injuries are a result of Cornell's independent actions, based on Cornell's own policies, not the Guidance Documents.  (Dkt. No. 36, Attach. 1 at 13-14.)

Vengalattore maintains that his "injuries are related to the discipline imposed by Cornell and the ensuing reputational harms," and that such "injuries could, at least in part, be redressed by a favorable decision

against the Department, because it would improve [his] reputation with potential future employers and his position with respect to Cornell." (Dkt. No. 42 at 6-7.) More specifically, his "career prospects would be improved," and "Cornell also could no longer just blame the Department for its own unfair proceeding if the guidance itself were declared unlawful, which would further improve [his] ability to challenge the process used against him." (*Id.* at 7-8.)

However, these arguments rest entirely on the actions of third parties, and fail to demonstrate how the requested relief as to federal defendants will redress his alleged injuries. Rather, Vengalattore only speculates that the requested relief would result in Cornell altering its independent choice to find him in violation of its "Romantic and Sexual Relationships" policy, and therefore improve his career prospects and his position with respect to Cornell, which is inadequate. *See Nat'l Wrestling*, 366 F.3d at 933, 937 (holding the plaintiffs had no standing to challenge the Department of Education's policy interpretations and clarifications on complying with Title IX, because the "direct causes" of the plaintiffs' injuries arose from the independent decisions of educational institutions that chose to eliminate or reduce the size of men's wrestling teams, and they "offer[ed] nothing but

speculation to substantiate their assertion that a favorable judicial decision would result in schools altering their independent choices regarding the restoration or preservation of men's wrestling programs").

And, as noted above, because Vengalattore has failed to claim that Cornell found him in violation of its "Romantic and Sexual Relationships" policy *because of* the Guidance Documents, his pleading fails to plausibly allege that the requested relief would redress his injuries.  *See Parsons*, 801 F.3d at 717 ("While [the court] cannot be certain whether and how the declaration sought by the [plaintiffs] will affect third-party law enforcement officers, it is reasonable to assume a likelihood that the injury would be partially redressed where, as here, the [plaintiffs] have alleged that the law enforcement officers violated their rights because of the [DOJ's report]." (citation omitted)).  Nor does the amended complaint allege that Cornell would have found Vengalattore in violation of its "Romantic and Sexual Relationships" policy absent the Guidance Documents.  *See SurvJustice Inc. v. Devos*, No. 18-cv-00535, 2019 WL 1434141, at *6 (N.D. Cal. Mar. 29, 2019) ("[T]here is nothing to suggest that in complying with Title IX and its implementing regulations schools would engage in the allegedly injurious conduct absent the 2017 Guidance.")

15

Because Vengalattore has failed to establish Article III standing, he is unable to challenge the Department's guidance documents.  *See Nat'l Wrestling*, 366 F.3d at 937 ("Absent a showing of redressability, appellants have no standing to challenge the Department's enforcement policies, and we have no jurisdiction to consider their claims.")  Accordingly, federal defendants' motion to dismiss Vengalattore's claims for violations of the APA and the Spending Clause is granted, and these claims are dismissed.

**B.    Cornell's Motion**

    *1.    Title IX*

Vengalattore claims that, in violation of Title IX, "Cornell discriminated against [him] because of his sex by applying an unfair, unreliable and partial process against him in resolving Roe's complaint against him," and that "Cornell applied its policies and procedures in a gender-biased manner . . . which led to an erroneous and adverse employment outcome."  (Am. Compl. ¶¶ 663, 668.)  Cornell argues that Vengalattore fails to state a Title IX claim because no private right of action exists under Title IX for claims of employment discrimination.  (Dkt. No. 41, Attach. 1 at 13-14.)  Thus, because Vengalattore was an employee at Cornell at all relevant times, and because the "claims relate[] to tenure denial and misconduct findings

16

constitut[ing] quintessential employment-related claims," he "has no basis

to assert claims under Title IX." (*Id.* at 14.)  The court agrees.

Title IX provides that "[n]o person in the United States shall, on the

basis of sex, be excluded from participation in, be denied the benefits of, or

be subjected to discrimination under any education program or activity

receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Although the

Second Circuit has not ruled on whether a private right of action exists

under Title IX for claims of employment discrimination, "[a]n overwhelming

majority of district courts in this Circuit have found that an implied private

right of action does not exist[] under Title IX for employees alleging gender

discrimination in the terms and conditions of their employment."  *Gayle v.*

*Children's Aid Coll. Prep Charter Sch*., No. 18 Civ. 9874, 2019 WL

3759097, at *4-5 (S.D.N.Y. July 29, 2019) (citations omitted); *see Philpott*

*v. New York*, 252 F. Supp. 3d 313, 319 (S.D.N.Y. 2017) ("Accordingly, I join

many other courts in this district, and hold that employment discrimination

claims are not actionable under Title IX." (citations omitted)); *Carter v. City*

*of Syracuse*, No. 5:10-CV-690, 2012 WL 930798, at *4 (N.D.N.Y. Mar. 19,

2012), *vacated in part by* 656 F. App'x 566 (2d Cir. 2016) ("The weight of

authority in this circuit . . . supports a finding that Title VII provides the

exclusive means under which a plaintiff may recover for employment

discrimination on the basis of sex.")

     Accordingly, Vengalattore's Title IX claim is dismissed.

     *2.*   *Title VI*

     Next, Vengalattore claims that, in violation of Title VI, "Cornell

intentionally discriminated against [him] because of his race, color or

national origin by applying an unfair, unreliable and partial process against

him in resolving Roe's complaints against him," and that "Cornell applied its

policies and procedures in a racially-biased manner . . . which led to an

erroneous and adverse employment outcome."  (Am. Compl. ¶¶ 686, 691.)

Cornell argues that Vengalattore fails to state a claim under Title VI

because he has not sufficiently pleaded: (1) "that Cornell was a recipient of

federal funds aimed *primarily* at funding employment," and (2) "that any

decisionmaker at Cornell was influenced by his national origin when those

decisionmakers took the employment actions Vengalattore now seeks to

challenge."  (Dkt. No. 41, Attach. 1 at 16.)

     Title VI is parallel to Title IX, except that it prohibits race

discrimination, not sex discrimination: "No person in the United States

shall, on the ground of race, color, or national origin, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  To state a claim for a violation of Title VI, a plaintiff must allege that: "(1) [the defendant] received federal financial assistance, (2) [the plaintiff] was an intended beneficiary of the program or activity receiving the assistance, and (3) [the defendant] discriminated against [the plaintiff] on the basis of race, color, or national origin in connection with that program or activity."  *Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000), *aff'd*, 62 F. App'x 28 (2d Cir. 2003) (citations omitted); *see Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981) ("[A] threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing employment." (citations omitted)).

With regard to the first two prongs, Vengalattore claims that Cornell is the recipient of federal funding, which is "aimed primarily at providing employment," "creat[ing] jobs and maintaining existing ones at the university," and "expanding job opportunities at the university and elsewhere."  (Am. Compl. ¶¶ 677-79.)  For example, he alleges that Cornell received an award from "the American Recovery and Reinvestment Act of

2009 to implement a new degree program 'specifically designed to introduce *graduate trainees* to the . . . industry' in order 'to cultivate the next generation of highly trained US *graduate students*'"; from the National Science Foundation "to help eliminate 'large gender differences in occupational retention among STEM *graduates* in early career, with a particular emphasis on . . . workplace climate in retaining *recent graduates*"; and from the National Aeronautics and Space Administration "to initiate a community college STEM partnership program aimed at improving 'training opportunities' and employment *for students* studying STEM fields."  (*Id.* ¶ 680 (emphasis added).)  However, such federal funding is arguably for the primary purpose of funding programs at Cornell, for the benefit of participating students, not for employing Vengalattore. *See, e.g.*, *Commodari*, 89 F. Supp. 2d at 378 (dismissing the plaintiff's Title VI claim for lack of standing, finding that the "intended beneficiaries of the [federally funded] program were the participating students, not the professors, such as [the plaintiff], who administered the program.  Put another way, the program was not 'aimed primarily at providing employment'" (citation omitted)).

Some of Vengalattore's other examples of federal funding provided to

Cornell "for the purpose of providing employment to [him]" include awards

from the U.S. Department of Defense and from the National Science

Foundation "to conduct his research and employ appropriate staff to do so."

(Am. Compl. ¶ 682.)  Drawing all factual allegations in favor of

Vengalattore, he has plausibly alleged that this federal funding is for the

primary purpose of providing employment to Vengalattore so that he can

conduct his research.

However, with regard to the third prong—discrimination on the basis

of race, color, or national origin—Vengalattore's Title VI claim fails.  To

satisfy the discrimination requirement, "a plaintiff must allege, *inter alia*,

(1) that the defendant discriminated against him on the basis of race;

(2) that that discrimination was intentional; and (3) that discrimination was a

substantial and motivating factor for the defendant's actions."  *Manolov v.

Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 531 (S.D.N.Y.

2013) (citing *Tolbert v. Queens Coll.*, 242 F.3d 58, 59 (2d Cir. 2001)).  "[A]n

actionable discriminatory purpose . . . implies more than intent as volition or

intent as awareness of consequences . . . . [it] implies that the

decisionmaker . . . selected or reaffirmed a particular course of action at

least in part 'because of,' not merely 'in spite of,' its adverse effects upon

an identifiable group."  *Clyburn v. Shields*, 33 F. App'x 552, 554-55 (2d Cir. 2002) (some internal quotation marks, some alterations, and citation omitted).

Here, Vengalattore's amended complaint fails to set forth facts from which the court can plausibly infer that the decisionmakers at Cornell intentionally discriminated against him on the basis of his race in resolving Roe's complaints about him.  Vengalattore claims that there were two racial characterizations of him made by Roe and a professor at Cornell—neither of whom are alleged to have been decisionmakers in Cornell's resolution of Roe's allegations against Vengalattore: (1) a professor wrote to Ritter: "Clearly the only students who are prepared to take the abuse he dishes out are both men and they are both from the Indian sub-continent, where perhaps the culture between advisor and protégé is different"; and (2) Roe's comments to Vengalattore while in the lab: "You are all Indians.  Of course you stick together," and, "They are Indians, who are hardworking like Chinese."  (Am. Compl. ¶ 693.)  Vengalattore contends that these statements were relayed to Ritter, and she "did not object" to these characterizations.  (*Id.*)

However, even if Ritter, the alleged final decisionmaker, (*id.*), was

aware of these statements, the court cannot plausibly infer that they were a substantial or motivating factor—or any factor at all—in resolving Roe's complaints against Vengalattore.  *See Clyburn*, 33 F. App'x at 555; *Sanders v. Grenadier Realty, Inc*., No. 08 Civ. 3920, 2009 WL 1270226, at *5 (S.D.N.Y. May 6, 2009) (dismissing Title VI claim where "Plaintiffs attribute[d] Defendants' decision not to offer them rent subsidies to three factors, one of which is their race, but g[a]ve no indication that Plaintiffs' race was accorded special weight, thus making it a 'substantial' or 'motivating factor'").

Vengalattore's reliance on *Menaker v. Hofstra University*, 935 F.3d 20 (2d Cir. 2019), for his argument that "[d]iscriminatory intent of subordinates may . . . be imputed to ultimate decisionmakers," (Dkt. No. 52 at 24-25), is unavailing.  There, the court found that a student's discriminatory intent could be imputed to the university, because the "officials specifically referenced [the student's] accusations in the course of terminating [the plaintiff], thereby acknowledging that she had 'played a meaningful role in the decision.'"  *Menaker*, 935 F.3d at 39.  Here, there are no factual allegations from which the court can plausibly infer that the alleged racial characterizations played any meaningful role, or were a

substantial or motivating factor, in Ritter's final determination finding

Vengalattore in violation of Cornell's Romantic and Sexual Relationship

policy.  *See id.*  At most, Vengalattore alleges that Ritter "made the final

determination . . . on matters related to those discussed by [the professor]."

(Am. Compl. ¶ 693.)  This vague and conclusory allegation is insufficient to

state a claim for intentional discrimination.  *See Clyburn*, 33 F. App'x at

555.

Similarly, Vengalattore claims that Cornell rejected its procedural

norms during the investigation because the investigators disregarded Roe's

alleged statements; failed to conduct an investigation into her "use of

inappropriate language"; and failed to "draw any adverse conclusions from

Roe's use of racially charged language."  (Am. Compl. ¶ 693.)  However,

these allegations are insufficient to give rise to an inference of intentional

discrimination against Vengalattore on the basis of his race.  *See Menaker*,

935 F.3d at 34 n.50 ("[W]e emphasize that our standard requires *clear*

irregularities to raise an inference of bias.  Variations among employers,

even among universities, are expected, and minimal irregularities (absent

other indicia of bias) do not suffice to suggest discrimination.");  *Iscensko v.*

*City of New York*, No. 16 Civ. 6535, 2017 WL 2880553, at *5 (S.D.N.Y. July

5, 2017) ("[T]he mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent.") (citation omitted)).

Accordingly, Vengalattore's Title VI claim is dismissed.

3.    *Due Process*

Vengalattore claims that "Cornell deprived [him] of his reputational interests by employing a flawed investigation that failed to comport with the basics of due process." (Am. Compl. ¶ 718.) Cornell argues that Vengalattore fails to state a Section 1983 claim, because Cornell is not a state actor. (Dkt. No. 41, Attach. 1 at 20-21.) The court agrees.

The Fourteenth Amendment, "which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the state, not to acts of private persons or entities." *Rendell Baker v. Kohn*, 457 U.S. 830, 837 (1982) (citations omitted). Vengalattore's constitutional due process allegations are against Cornell, a private institution, not a state actor. *See Doe v. Rensselaer Polytechnic Inst.*, No. 1:18-CV-1374, 2019 WL 181280, at *3 (N.D.N.Y. Jan. 11, 2019) ("[T]o the extent that Plaintiff is claiming that Defendant RPI's disciplinary proceedings denied him constitutional due process, this argument has no

25

merit because Defendant RPI is a private college and not a state actor.");
*Curto v. Smith*, 248 F. Supp. 2d 132, 137, 139 (N.D.N.Y. 2003) (finding that
receipt of state funding and state regulation did not render Cornell
University or its statutory colleges a "state actor" in its creation and
enforcement of educational and disciplinary policies).

To the extent Vengalattore argues that he "has adequately alleged
that Cornell is a state actor because of coercion from the Department of
Education in adopting the unfair disciplinary process it used against him,"
(Dkt. No. 52 at 27), such argument is unavailing.  *See Doe v. Univ. of
Denver*, No. 16-cv-152, 2018 WL 1304530, at *7 (D. Colo. Mar. 13, 2018)
("[A] private university's compliance with Title IX regulations does not
transform it into a state actor for purposes of the Fourteenth Amendment."
(citing *Doe v. Case W. Reserve Univ.*, No. 17-CV-414, 2017 WL 3840418,
at *10 (N.D. Ohio Sept. 1, 2017) ("Despite extensive research, the Court
has not found a single case in which a court has determined that a private
school's compliance with Title IX's regulations make that entity a state
actor for purposes of a Fourteenth Amendment due process claim.")) (other
citations omitted)).

Accordingly, Vengallatore's Section 1983 claim is dismissed.

26

4.    *Defamation*

"It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) (citations omitted).  "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity[.]" *Id.* (citation omitted).  Here, because the court dismisses all of Vengalattore's federal claims as against both Cornell and federal defendants, the court declines to exercise supplemental jurisdiction over his state law claim; therefore, Venglattore's defamation claim is dismissed.

## V.   Conclusion

WHEREFORE, for the foregoing reasons, it is hereby

ORDERED that federal defendants' motion to dismiss (Dkt. No. 36) is GRANTED; and it is further

ORDERED that Cornell University's motion to dismiss and/or for summary judgment (Dkt. No. 41) is GRANTED; and it is further

ORDERED that Vengalattore's amended complaint (Dkt. No. 31) is

27

**DISMISSED**; and it is further

     **ORDERED** that the Clerk close this case; and it is further

     **ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

May 1, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge